## SOLOMON MUELLER

*v.*

## CATHARINE REBHAN.

1.  JURY—*mode of filling panel of petit jurors.* Where a sufficient number of the jurors drawn and summoned do not answer to their names when called, it is irregular to fill the panel by directing the sheriff to summon others in the place of the absentees. But this irregularity will not render the organization of the panel void.

2.  Where the panel of the petit jury is filled not in accordance with the statute, but by the selection of the sheriff under the order of the court, advantage of the irregularity can only be taken by challenge to the array. If a party enters upon the business of selecting a jury from such panel, he will waive his right to challenge the array and any objection he may have as to the regularity of the organization of the panel, and he can not object to any juror so selected to fill the regular panel, as though they were talesmen.

3.  SAME—*ground of challenge—service on jury within year.* The fact that a juror has served on a jury within a year prior to being called in a case does not apply to those on the regular panel, but only to those called as talesmen. The fact that a juror has been irregularly put upon the panel makes no difference in this respect, as, without a challenge to the array, he must be treated as properly on the panel.

4.  WITNESS—*competency—husband for his wife.* Section five of the act relating to evidence, by its terms implies that the language of section one was intended to be used in a sense so broad as to admit husband and wife to testify for or against each other as other witnesses, in all cases, except so far as the act provides otherwise, and hence the necessity of the limitations in section five confining such witnesses to specified cases.

5.  Section five of the act also contains affirmative legislation rendering a husband competent to testify for or against his wife in certain specified cases, among which are cases where the wife would if unmarried be plaintiff, and cases where the litigation concerns the separate property of the wife. In these cases the husband may testify for or against the wife in the same manner as other parties may under the act.

6.  On bill by a married woman to contest the validity of her father's will, her husband is a competent witness for or against her as to any matter whatever of which he has knowledge, except as to admissions and conversations of his wife made during the marriage.

7.  ADMISSIONS—*of person not party, when admissible.* On bill filed to contest the validity of a will, the declarations and admissions of a deceased devisee are admissible in evidence against another devisee who has succeeded by will

or devise to the interest of the deceased devisee, on the ground of privity in estate.

8. The declarations and admissions of privies in estate made before parting with their interest, are admissible in evidence against the parties succeeding to their estate.

9. PRACTICE—*as to order of introducing proof.* The usual rule of practice in this State is, that the party upon whom the burden of proof rests must in the first instance produce all the proof he proposes to offer in support of his allegation, and that after his adversary has closed his proof he may only introduce such proof as directly rebuts that of his adversary. In this, however, the trial court has a discretion, which should be exercised so that neither party shall be taken by surprise, or deprived without notice of an opportunity of introducing material evidence.

10. Where, on the trial of an issue as to the sanity of a testator, after the defendant has closed his case in support of the will and rested his case upon the production of the will, the affidavits of the subscribing witnesses and the order admitting the will to probate, he was notified by the court that if he desired to produce any further evidence of the sanity of the testator he must then do so, otherwise he could not after the contestant had closed his case, it was *held* that the defendant could not complain if he was not afterwards allowed to cumulate proof on the subject.

11. SAME—*right to further proof of facts conceded.* After the examination of a great number of witnesses as to certain facts which are conceded by the opposite party, there is no error in refusing to hear other witnesses to prove the same facts.

12. Where it is conceded that an absent witness will swear to the same state of facts as the witnesses already examined, and the court then states that he will hear no more evidence as to such facts, but it does not appear that the absent witness was produced, or was offered to testify, there will be no error in the remark of the court indicating what he would do if the witness should be produced.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. W. WINKELMAN, for the appellant.

Mr. JAMES M. DILL, and Mr. W. C. KUEFFNER, for the appellee.

This was a bill filed May 8, 1875, by Catharine Rebhan, the appellee, against Solomon Mueller and others, to set aside the will of George Christian Mueller, (executed on the 14th

of March, 1870,) who died a few days after the execution of the will. The will was afterwards duly probated.

At the time of the death of the testator he left but four heirs, Solomon Mueller, George Mueller, Margaret Reinhardt and Catharine Rebhan. By the terms of the will $50 was given to each of the daughters, and the residue of his property, which was variously estimated from $40,000 to $120,000, was given to the sons, Solomon Mueller and George Mueller, and Solomon and George were appointed executors of the will. Afterwards, and before the filing of this bill, George Mueller (heir and executor as aforesaid) died, leaving a will by which he gave his brother Solomon all his property, real and personal.

The grounds upon which it was sought to set aside the will were two : 1. It was charged that George Christian Mueller, at the time of the making of the will, was mentally incapable, and that he was of weak intellect, not possessed of capacity sufficient to made a valid will. 2. That he was induced to make the will by undue influence exerted upon him by his sons, Solomon and George.

An issue was formed as to the validity of the will, that was submitted to a jury for trial at the January term, 1877, and resulted in a verdict that the will in question was not the will of the deceased. A motion for a new trial was made by the defendants and overruled by the court, and a final decree entered setting the will aside, and Solomon Mueller appeals to this court.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

It appears from the record that some days before this case was called for trial at that term of the court, some of the jurors originally drawn and summoned, when called, not appearing, and the regular panel not being full, the court ordered the sheriff to summon a number of jurors sufficient to fill up the same. The persons so summoned were, by order of the court, put upon the regular panel for two weeks.

Among the jurors so called by the sheriff and placed upon the panel by order of the court for two weeks, were the names of Ellis and Hess.

When this cause was called for trial four jurors were drawn from the regular panel thus organized, who were examined by the parties and accepted and sworn. Then four others were called and were accepted by the appellee, among whom was the juror Ellis. Upon examination by appellant Ellis testified that he had served in that court as a juror on the day previous. Appellant thereupon challenged him for cause, upon the ground that he had served upon a jury within a year in a court of record in that county. This challenge was overruled by the court, and the four jurors were sworn. Among the next four who were called was the juror Hess, who was interrogated by appellant, and it was found that he had served as a juror in a cause at that term of the court before the calling of this cause. Appellant thereupon challenged Hess as incompetent, upon the ground that he had served upon a jury within a year in a court of record in that county. This challenge was overruled.

It is insisted by appellant that the court erred in overruling his challenges to these jurors. The counsel for appellant takes the position, that inasmuch as Ellis and Hess were not drawn by the clerk of the circuit court from the box in the county clerk's office, but were summoned by the sheriff, "they were not on the regular panel," and should have been treated as talesmen; and hence insists that his challenges ought to have been sustained, under the provision of section 14, chapter 78 of the Revised Statutes of 1874, which says, "It shall be sufficient cause of challenge of a petit juror, if he is not one of the regular panel, that he has served as a juror on the trial of a cause in any court of record in the county within one year previous to the time of his being called as a juror."

This position, we think, is not well taken. It is, undoubtedly, true that the manner in which these men were placed upon the regular panel was not in accordance with the stat-

10—94 Ill.

ute. This irregularity is not such as to render the organization of the regular panel void. By a challenge to the array the question of the regularity or proper organization of the panel might have been presented. No such challenge was made in this case. Appellant having entered upon the business of drawing a jury from the regular panel as organized, had thus waived his right to challenge the array, and waived any objection which he might have taken to the regularity of the organization of the panel. It was not competent for him, after having accepted four of that panel, to challenge the jurors in question, as though they had been called as talesmen. In *Stone* v. *The People*, 2 Scam. 326, it is laid down that objections to the mode of summoning the petit jury must be taken by challenge of the array, or by motion to quash the array, or the tales—if the objection goes only to the tales. In *Gropp* v. *The People*, 67 Ill. 160, the same doctrine is laid down, and reference is there made to 5 Bac. Abr. 345, title, Juries, E.: where it is said, neither party shall take a challenge to the polls which he might have had to the array.

We are referred to the cases of *Bissell* v. *Ryan*, 23 Ill. 566, and to *Brooks* v. *Bruyn*, 35 id. 392, as holding a different doctrine. These cases were decided under the act of 1859. That act provided, " that hereafter it shall be sufficient cause of challenge to any juror called to be sworn, in any cause, that he has been sworn as a juror at any term of court held within a year prior to the time of such challenge." It will be observed that the act in force at the time of the trial of the cause at bar differs from that of 1859, in limiting this cause of challenge to such jurors as are " not of the regular panel." This limitation excludes the cases of Ellis and Hess from the rule laid down by this court in the cases in 23 Ill. and 35 Ill.

It is also insisted by appellant that the circuit court erred in permitting the husband of appellee to testify to matters transpiring, and declarations made, before the death of the testator.

At common law, where the wife was incompetent to testify by reason of being a party, or by reason of being interested in the event of the suit, the husband was also held incompetent. The question presented in this case is, as to how far that rule has been modified by statute and whether the rule has not in fact been wholly abolished. By the act approved March 29, 1872, "in regard to evidence and depositions in civil cases," which is re-enacted (with some modifications) and embodied in chap. 51, Rev. Stat. 1874, it was provided in section 1 : "That no person shall be disqualified as a witness in a civil action, suit or proceeding, except as hereinafter stated, by reason of his or her interest in the event thereof, as a party or otherwise." * * * * By section 2, it was provided : "No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion or in his own behalf by virtue of the foregoing section (1), when any adverse party sues or defends * * * * as the executor, administrator, heir, legatee or devisee of any deceased person, * * * except in the following cases, namely, * * * a party or interested person may testify to facts occurring after the death of such deceased person. " * * * And by section 5, "No husband or wife shall, by virtue of section 1 of this act, be rendered competent to testify for or against each other as to any transaction or conversation occurring during the marriage, * * * except in cases where the wife would, if unmarried, be plaintiff or defendant, * * * and except in cases where the litigation shall be concerning the separate property of the wife, * * * and except, also, in actions upon policy of insurance of property, as far as it relates to the amount and value of the property alleged to have been destroyed, * * * in all of which cases the husband and wife may testify for or against each other in the same manner as other *parties* may, under the provisions of this act: *Provided,* that nothing in this section contained shall be construed to authorize or permit any such husband or wife

to testify to any admissions or conversations of the other, * * * except in suits or causes between such husband and wife."

It will be seen that section 5, by its terms, necessarily implies that the language of section 1 was intended by the legislature to be used in a sense so broad as to admit husband and wife to testify for or against each other as other witnesses, in all cases, except in so far as the act should otherwise provide; and hence the necessity of the limitations found in section 5, confining such witnesses to specified cases. This section also contains affirmative legislation, rendering a husband competent to testify for or against the wife in certain specified cases; among which are cases where the wife would, if unmarried, be plaintiff, and cases where the litigation concerns the separate property of the wife. In these cases the statute says the husband may testify for or against the wife in the same manner as other *parties* may under the provisions of this act.

It is plain that in this case, if unmarried, the appellee would necessarily be the party complainant; and it is also plain that the subject matter of litigation is the separate property of the wife. We then have the express provision in section 5, that in this case the husband may testify for or against his wife "as other *parties* may under the provisions of this act."

It is insisted, however, by appellant that the term "parties," here, is not used as synonymous with the word "persons," or "witnesses," but has reference to the parties to the suit, and that this language is to be construed as if it were written that the husband in such case might testify for his wife only as to matters in relation to which she is competent to testify for herself.

Appellant insists that the wife is rendered incompetent (by section 2 of the act) to testify in this case as to matters occurring prior to the death of her father; and that, therefore, her

husband must also be held equally incompetent to testify in her behalf to such facts.

In *Pegg* v. *Carroll*, 89 Ill. 205, it was held, that in a proceeding for partition of land between heirs and for the adjustment of matters of advancements made to some, the husband of one of the parties was a competent witness in behalf of his wife. Although the parties claimed their respective rights, and sued and were sued in respect to rights held by inheritance, yet the statute could have no application to such case. The statute in this regard was intended to protect the estates of deceased persons from the assaults of strangers, and relates to proceedings wherein the decision sought by the party so testifying would tend to reduce or impair the estate, and does not relate to the relative rights of heirs or devisees, as to the distribution of an estate, in proceedings by which the estate itself is in no event to be reduced or impaired.

The objection to the competency of this witness was not well taken. Under our statutes, we hold that the husband was a competent witness to testify in this case to any matter whatever of which he had knowledge, except as to admissions and conversations of his wife, made during marriage.

Next, it is insisted by appellant that the declarations and admissions made by George Mueller, (one of the legatees under the will) during his life, were incompetent evidence as against his co-legatees. Solomon Mueller is the only party complaining of the decision in this case. A part of his interest in the property in question was derived from George Mueller, through his (George Mueller's) will. In so far as that part of the estate was involved, Solomon Mueller and George Mueller were privies in estate, and the declarations of George Mueller were competent in that regard as against Solomon Mueller.

It is also insisted that the court erred in refusing to permit appellant, after the complainant had closed her testimony as to the sanity of George Christian Mueller at the time of the

making of the will, to introduce testimony tending to prove that he was sane and mentally competent.

. As a matter of practice the rulings of courts are not uniform upon this question. In some courts it is held that neither party is called upon to produce all his testimony in support of any allegation in issue until it has been developed on the trial that an issue in the evidence is made upon that question; the view of such courts being that where the burden of proof of a given allegation rests upon a party, it is sufficient for that party, in the first instance, to produce proof enough to make a *prima facie* case, and that he is not required to accumulate other testimony until evidence has been introduced tending to contradict his *prima facie* case. That rule has not prevailed in the courts of this State; but the more usual rule is, that the party upon whom the burden of proof rests must, in the first instance, produce all the proof he proposes to offer in support of his allegation; and after his adversary has closed his proof, he may only be heard in adducing proof directly rebutting the proofs given by his adversary. This question of practice must, to a greater or less degree, be left to the discretion of the court trying the case. This discretion should be exercised in such a manner that neither party shall be taken by surprise and deprived, without notice, of an opportunity of producing any material proof.

In this case, when the appellant closed his proof and rested his case upon the production of the will, the affidavit of the subscribing witnesses and the order of the court admitting it to probate, appellant was notified (the record shows) that if he desired to produce any additional proof of the sanity of the testator it might be then produced, otherwise the introduction of it would not be permitted after the defendant had closed his case. Appellant, having rested his case upon this *prima facie* proof, under these circumstances can not be allowed to complain that he was not permitted to cumulate proof upon this subject. An examination of the proof, how-

ever, shows that the court did allow appellant to introduce and prove any and all facts having a tendency to rebut the proof offered by appellee, except in so far as he proposed to interrogate witnesses as to their opinions as to whether the testator was sane. We are led to believe that appellant suffered no injury from this ruling of the court.

After the appellant had introduced and examined seventeen witnesses, who testified in substance that they had long been acquainted with the testator and with his sons, and that they had observed no material change in the capacity of the testator, in the few years next prior to the making of the will, from what had been his mental condition in former years, and that during this time the testator seemed to be " the boss of the farm," counsel for appellant stated to the court that Mr. Giebhardt, a witness that he wished to produce, was not present in court, that he would like to introduce him if he came, adding that " he is the only witness of importance " they had to introduce. Counsel for appellee thereupon offered to admit that all the other witnesses of defendant would swear that there had been no change in the actions of the deceased, George Christian Mueller, as far as they knew; that he was boss of the farm; and as to his treatment by the sons, they would swear the same as the witnesses for appellant who had already been examined. The court thereupon stated that he would permit no more witnesses to be examined on the part of the change of conduct of the old man, the treatment of the old man by the boys, and the bossing of the farm. To this ruling of the court the appellant excepted, and no other witnesses were offered by defendant.

We perceive no error in this transaction. What the court said on this subject was a mere indication as to what he would rule if the witness in question should come into court before the close of the trial, and be offered as a witness. Complainant did not have the witness present in court, nor does the record show that the witness was brought into court at any time before the close of the trial. Even if the witness had been

brought in and produced, counsel for appellee having conceded, in substance, all that it seems was proposed to be proved by the absent witness, it would have been unnecessary to have occupied the time with further testimony upon those points. Appellant makes some other points in his brief, but these seem to be the points upon which he chiefly relies.

We find no error in the other positions, and think it unnecessary to discuss them. The decree of the circuit court must be affirmed.

*Decree affirmed.*