MARY J. GREEN

*v.*

THE PHŒNIX MUTUAL LIFE INSURANCE COMPANY *et al.*

*Filed at Ottawa October 31, 1890.*

1. SANITY — *quantum of evidence — to overcome the presumption of sanity.* As the law presumes the sanity of all persons, the burden is cast upon the party alleging insanity at a particular time, to establish it by a preponderance of proof. No rule can be laid down as to the quantum of evidence necessary to establish insanity, except that it must be sufficient to overcome the legal presumption of sanity, and to overbalance the testimony tending to sustain such presumption.

2. PRACTICE — *limiting number of witnesses and quantum of proof.* The trial court must of necessity exercise a discretion as to the number of witnesses to prove a given fact that is not disputed, or that is collateral to the main issue, depending very much upon the nature and subject matter of the inquiry. Where a particular point appears to the court to be satisfactorily established, the calling of further witnesses

may be stopped, subject, however, to the right to recall, should the point be subsequently disputed.

3. On the hearing of a cause in chancery involving the sanity of the complainant at a former period, as affecting his capacity to execute certain deeds of trust involved in the litigation, after the examination of eight witnesses by complainant on that question, the court limited the parties each to nine witnesses, including those already examined on the question of sanity, and found the issue for the defendants: *Held,* that the court erred in limiting the number of witnesses, especially so after the complainant had examined the greater part of his nine witnesses before the rule was announced.

4. If the power of the trial court to limit the number of witnesses, as so exercised, existed, which was not conceded, it should have been done at the beginning of the trial, so as to give each party an opportunity of selecting such witnesses as he might have deemed most important.

APPEAL from the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

This bill was filed by appellant on November 16, 1886, in the circuit court of Cook county, against the Phœnix Mutual Life Insurance Company, Aaron C. Goodman, Lemuel Baldwin, Ptolmey E. Hosmer and Lyman Baird, to set aside a sale made by Baird, as trustee, under two deeds of trust, of lots 2 and 3, in block 24, of Smith's subdivision, etc., in Chicago.

The deeds of trust were dated May 20, 1875, and were given to secure, the one embracing lot 2, $2500, and the other, embracing lot 3, $3000, due in five years, with semi-annual interest from date. It was provided in the deeds of trust, that on twenty days' default in the payment of interest it should be lawful for the legal holders of the notes thereby secured to declare the principal sum due, and require the trustee to make sale, etc. In May, 1877, Baird, the trustee, advertised the property for sale under the trust deed, averring in the notice that the sale was on account of the default in the payment of the May and November interest for the year 1876, and the election of the legal holder of the note to declare the principal due. On May 24, 1877, appellant was duly adjudged to be

insane by the county court of Kane county, and committed to the State insane hospital, where she remained several months, when she was permitted to be taken away by her brother, who was a physician, but she was not discharged as being restored. The bill alleged that she was not in fact restored to sanity until about the time of filing the same.

It is also alleged, that in the latter part of the year 1876 Baird was the general financial agent of the insurance company in Chicago, and that possession of the property described in the trust deed, and leases thereof, were turned over to meet the interest, and that on January 10, 1877, appellant paid Baird $100 to be so applied. It is also alleged, that Baird wrote the company, requesting it to send him the trust deeds and notes, but without instructions as to any action to be taken; that the company, the legal holder of said notes, never declared the principal of the debt due, nor required the trustee to advertise or sell the property.

The sale was made to Aaron C. Goodman by Baird. Goodman was the president of the insurance company, and took and held the title for the company. In 1881 Goodman sold the property to Baldwin for $8500, and in 1882 Baldwin sold the property to Hosmer for $11,000, no improvements having been put upon the premises to increase its value.

The bill prayed that the deeds be set aside, the redemption be allowed, etc., and that if either the deed to Baldwin or Hosmer should be held valid as against complainant, the insurance company might be decreed to pay her the present value of the property, less the amount due on the trust deed. The grounds for relief may be summarized: First, that complainant was insane at the time of the trustee's sale, and continued so until a few months before the filing of the bill; second, that the trustee accepted the $100 on the interest due in May, 1876, and an assignment of the leases of the property, and that the rents, properly collected, would have paid interest and taxes; and third, that the sale was for an inadequate price.

On April 11, 1889, appellant, by leave, amended her bill, alleging, on information and belief, that she was insane at the time she executed the trust deeds, and had been for three years prior thereto, and so continued until shortly before the filing of the original bill.

The answers of Baldwin and Hosmer set up the defense that they were innocent purchasers for value. The other defendants denied all knowledge of insanity, denied the assignment of leases, or that rent could have been collected sufficient to pay interest and taxes, or that the property was sold for an inadequate price. All of the answers alleged that complainant was restored to sanity several years before the filing of her bill, and that she was guilty of *laches,* etc.

On the hearing, after appellant's solicitor had examined thirteen witnesses, eight of whom testified either to insanity at particular periods, or to facts and circumstances tending, as it was claimed, to show insanity, and had commenced to examine the fourteenth, the court said: "I want to ask you how many witnesses you expect to call on this line of examination. I am about tired. You have examined, I think, nine witnesses on the question of her sanity, all of them from Kane county, and all have testified to conversations they had with her, and in very few instances, indeed, have there been any particular instances or facts that could have gone to a jury or that could go before a court. Now, the rule is, three experts, and I do not want to examine every one Mrs. Green knew in Kane county." Counsel replied that the witnesses were not called as experts, but to prove facts and circumstances which indicated insanity. The court replied: "It don't throw any light on this case, so far as I am concerned, to call so many. Defendants' counsel say they are willing to be limited in number. You may go on with this witness. I think that will be enough, and I will limit them to the number." The witness then on the stand was withdrawn, and another called and examined. Three other witnesses were permitted to be examined

to show her condition in 1881, down to the time of filing her bill. Counsel then offered other witnesses to prove the insanity of Mrs. Green, or facts and circumstances tending to establish the same, stating that eighteen others were present who were of importance as witnesses, and by whom such facts could be established. But the court peremptorily declined to permit any of them to be examined, upon the ground that a sufficient number had already been called.

A general decree was entered dismissing the bill for want of equity, and from that decree this appeal is prosecuted.

Mr. W. P. BLACK, Mr. F. A. JOHNSON, and Mr. J. N. BARKER, for the appellant:

The court erred in limiting the number of witnesses, without prior notice to complainant.

Mr. L. H. BOUTELL, for the appellees:

Limiting the number of witnesses to a given point was within the discretion of the court. 2 Phillips on Evidence, (C. & H.'s notes,) p. 396, note 324; *Anthony* v. *Smith,* 4 Bosw. 508; *Gray* v. *St. John,* 35 Ill. 222; *Mueller* v. *Rebhan,* 94 id. 151; *Bissell* v. *Cornell,* 24 Wend. 357; *Bunnell* v. *Butler,* 23 Conn. 69; *Fraser* v. *Jennison,* 42 Mich. 423.

Messrs. WILSON & MOORE, for the appellee Hosmer.

Mr. WILLIAM ELLIOTT FURNESS, for the appellee Baldwin.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

We are of opinion that a single point, only, is presented by this record which we can properly consider. One of the important questions involved at the hearing was, whether at the time of the execution of the trust deeds, and the subsequent sale thereunder, and from thence to shortly before the filing of the original bill, appellant had been and was insane. It is substantially conceded, and if it was not it is clearly manifest,

that the issue of insanity, and whether the complainant was thereby excused from the delay in bringing her bill, or whether she was guilty of *laches* therein, was of controlling importance.

The law presumes the fact of sanity, and hence the burthen is cast upon the party alleging insanity, to establish it by a preponderance of proof. No rule can be formulated as to the *quantum* of evidence necessary to establish insanity, otherwise than that it must be sufficient to overcome the legal presumption of sanity, and to overbalance the testimony tending to sustain such presumption. This preponderance of evidence necessary to satisfy the judicial mind, does not, as a matter of course, depend upon the number of witnesses testifying on either side, but when all are apparently possessed of the same means of knowledge, and are equally intelligent and credible, the greater number must generally prevail. The trial court must, of necessity, exercise discretion as to the number of witnesses to prove a given fact that is not disputed, or that is merely collateral to the main issue, depending very much upon the nature and subject matter of the inquiry. Familiar illustrations of cases in which the discretion could not be exercised, where the inquiry is single, as, in cases of right of way, the grant of a prescriptive right, the proof of a custom, or the identity of persons or property, which are disputed, will readily occur to any one. The phases of insanity, and the facts and circumstances which may tend to establish it and are proper for consideration, are so numerous and varied that a great number of witnesses may be required to determine the fact in issue; and it is found that persons of equal intelligence differ in opinion as to the inference to be drawn from such facts and circumstances. In such cases great latitude has always been allowed, and should prevail. No reason can be perceived why the same rule might not be applied to any single collateral fact that would be applied to such collateral fact in any other inquiry. It must be apparent that the limitation of witnesses, in such cases, to an equal number on each side,

as was here done, even supposing they were of equal credit and had equal means of knowledge, would be to defeat the party holding the affirmative of the issue.

The court may undoubtedly limit the number of witnesses called as experts, and in some cases for the purposes of impeachment. *Fraser* v. *Jennison,* 42 Mich. 233; *Bunnell* v. *Butler,* 23 Conn. 69; *Bissel* v. *Cornell,* 24 Wend. 357; 2 Phillips on Evidence, (Cowen & Hill's notes,) 396, note 324. It should, however, be understood, that in such cases the exercise of the discretion must be reasonable. The court may not arbitrarily determine the number of witnesses that may testify in such cases. In 1 Wharton on Evidence, sec. 505, the rule is thus stated: "A trial might be mischievously delayed if a party were permitted to call all the witnesses he chooses to prove any one particular relevant point, and, consequently, when such point appears to the court to be satisfactorily established, the further calling of witnesses to prove it may be stopped, subject, however, to the right to recall, should the point be subsequently disputed." So in *Mueller* v. *Rebhan,* 94 Ill. 142, and in *Gray* v. *St. John,* 35 id. 222, the rule is laid down by this court; that where a particular fact is not controverted, or is conceded, the trial court may rightfully limit the number of witnesses called to establish such fact. Best on Evidence, secs. 47, 48, 596.

The main fact in issue—that is, as to the sanity of the complainant,—was disputed, both in the answer and by proof, and it seems clear from the remarks of the court, that at the time he made the order limiting the complainant to nine witnesses, he was not satisfied that the fact of insanity was established. Moreover, if the power of the trial court to limit the number of witnesses, as here exercised, existed, which can not be conceded, it should have been done at the beginning of the trial, so as to give each party an opportunity of selecting such witnesses as might be deemed most important. This would have the merit, at least, of placing the parties on an

·equal footing.    By the course pursued, the complainant was practically deprived of this privilege, except as· to the last ·witness.

While the court might, as before said, in the exercise of a ·sound discretion, limit the number of witnesses called to prove any collateral fact, or any fact conceded, or which the court might regard as established, we are of opinion that the court ·erred in limiting the witnesses to be called ˙by complainant upon this issue,—and especially must this be so where the order was made after the designated number of witnesses had been examined by her.

We do not deem it proper to consider the other points in the case, as it must be again heard, and therefore refrain from the expression of opinion thereon.

For the error indicated, the decree of the circuit court will be reversed, and the cause remanded.

*Decree reversed.*