ABRAHAM LIEBERMAN

*v.*

CHICAGO AND SOUTH SIDE RAPID TRANSIT RAILROAD COMPANY.

*Filed at Ottawa March 24, 1892.*

1. EMINENT DOMAIN—*essential averments in petition to condemn, to give jurisdiction.* An averment in the petition by a railway company to condemn land for a right of way, either that the compensation to be paid for or in respect to the property sought to be taken or damaged. can not be agreed on by the parties, or that the owner of the property is incapable of consenting, or his name or residence is unknown, or that he is a non-resident, is jurisdictional.

2. SAME—*right of property owner to contest petitioner's right to condemn.* The property holder has the right to contest the petitioner's right to condemn, and when he does so, the burden is thrown upon the latter to maintain its right by proper proofs. But when the defendant fails to make such contest, the right to condemn will be admitted, leaving the amount of compensation or damages to be awarded the only matter in controversy.

3. SAME—*right to condemn, a question for the court, before impaneling the jury.* The question of the right to condemn land for a public use is preliminary, and is for the court to determine before the impaneling of a jury to fix the compensation or damages.

4. SAME—*waiver of contest of right to condemn.* Where the land owner appears, and consents to the selection of the jury, and contests the case on the merits, he will waive all contest as to the right to condemn.

5. SAME—*effect of stipulation of railroad company limiting the uses of the property.* Where a railway company has a general discretion to construct and operate a railroad in a city, property owners whose property will be damaged thereby will have the right to have their damages. estimated with reference to any use the petitioner, under its charter, may see fit to apply its railroad when built. But the railway company, having such unlimited power, may, by stipulation, duly authorized, restrict itself as to the purposes of the road, the character of its machinery and appliances, and the fuel to be used, and such stipulation will thereafter be binding on the company.

6. On a proceeding to fix the compensation and damages to be paid for land sought for railroad purposes, a stipulation, made under the authority of the company, that the road, which was an elevated one, should be used only for passenger traffic, that no soft or bituminous

·coal should be used in operating the road, and that the motive power should be fully equipped with the best modern devices calculated to make it noiseless and smokeless, and to prevent the discharge of cin- ·ders and sparks, may be properly given in evidence on the question of the compensation and damages to be awarded.

7. SAME—*limiting evidence of damage to property not taken, to date of filing petition.* Where the petition for the condemnation of land for an elevated railway company is several times amended in respect to the description of the property sought to be condemned, and not by way of substitution of one parcel of land for another, it will not be ·error for the court to restrict the evidence of the value of the property and damages to property not taken to the date of filing the original petition.

8. ELEVATED RAILROAD—*operated under general Railroad act.* The act of 1872, which provides for the incorporation of companies "for the purpose of constructing and operating any railroad in the State," ap- plies to elevated railroads. Therefore, a railway company incorporated under that act, with authority to construct a railroad, without qualifi- ·cation or limitation as to its character, is authorized to construct an ·elevated railroad.

APPEAL from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

Messrs. MOSES & PAM, and Mr. E. H. GARY, for the appel- lant.

Mr. E. J. HARKNESS, Mr. W. W. GURLEY, and Mr. JNO. P. WILSON, for the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a petition by the Chicago and South Side Rapid ·Transit Railroad Company, to condemn certain lands lying ·along the west side of and adjoining the alley running north and south between State street and Wabash avenue, Chicago. ·The petition embraced various parcels of land not in contro- versy here, Abraham Lieberman, one of the property-owners whose lands were sought to be condemned, being the only · ·appellant. Lieberman's property consists of a number of lots ·fronting on State street, between Fourteenth and. Sixteenth

streets, and running back to the alley, viz., lots having a frontage of about sixty-nine feet of which he is the owner in fee.; also lots immediately adjoining the same on the south, having a frontage on State street of one hundred and twenty-seven feet, in which he has a leasehold interest under a lease expiring May 1, 1897; and also three other lots having a frontage on State street of sixty feet, and lying south of the foregoing, and separated therefrom by an intervening lot twenty-five feet in width and on which he has a leasehold interest as tenant from year to year.    The strip of land sought to be taken from the rear of these lots adjoining the alley for right of way varies in width from twenty to twenty-five feet.

At the time the petition was filed, Lieberman was, and for several years prior thereto had been, extensively engaged in the business of buying, selling and dealing in old iron, and was occupying said lots for carrying on said business.    He claims that the taking of said strip of land will leave the portion of his premises remaining wholly inadequate to the requirements of his business, and that he should be allowed, as damages, in addition to the value of the land taken, the depreciation in the value of the land not taken, the cost of the removal of his business, machinery, fixtures and stock in trade to another location, and compensation for the interruption of his business during such removal.

The cause was tried by a jury who, after having heard the evidence and viewed the premises, awarded certain sums of money to the owners and parties interested in the several pieces of land taken as compensation therefor, but in each case found that there were no damages to the portion of said lots not taken.    The sums thus awarded for the parts of the lots which Lieberman owned in fee taken for said right of way was $5748.75.    They also awarded him for improvements, cost of removal and damages to business on lands or lots owned or occupied by him the sum of $4000.    The court, after denying Leiberman's motion for a new trial, gave judg-

ment in accordance with said verdict, and from that judgment he has appealed to this court.

It is strenuously urged that the compensation and damages are inadequate, and that for that reason a new trial should be awarded.    As is not unusual in cases of this character, the opinions of the witnesses as to the value of the land taken and as to the damages to the land not taken are widely divergent.    The evidence adduced on behalf of the appellant, taken by itself, would doubtless have warranted a larger award, but when all the evidence is considered together, we are unable to say that substantial justice has not been done.    We shall not undertake the useless task of giving in this opinion an analysis of the evidence, but shall content ourselves with the general statement, that we have examined it with care, and have been brought to the conclusion that it supports and warrants the verdict.

A number of legal propositions are raised which, so far as we deem them material, we shall proceed to notice.    At the trial before the jury, no evidence seems to have been adduced in support of the averment of the petition that the petitioner was unable to agree with Lieberman and the other respondents as to the compensation to be paid them in respect to the property proposed to be taken, and it is urged that the absence of such evidence goes to the jurisdiction of the court, and that the motion by Lieberman's counsel, made at the close of the petitioner's evidence, to dismiss the petition for want of jurisdiction should therefore have been sustained.

It may be admitted that an averment in a petition by a railway company to condemn land for right of way, either, that the compensation to be paid for or in respect to the property sought to be appropriated or damaged for such purpose can not be agreed upon by the parties interested, or, that the owner of the property is incapable of consenting, or, that his name or residence is unknown, or, that he is a non-resident of the State, is, by the second section of the Eminent

Domain Law, made jurisdictional. (R. S. chap. 47, sec. 1; *Reed* v. *O. & M. Ry. Co.* 126 Ill. 48; *Chaplin* v. *Highway Commissioners*, 129 id. 651.) But while this is so, the question of the right of the petitioner to maintain its petition was not before the jury, and was a matter with which they had no concern. In condemnation cases the jury is empaneled merely to ascertain and report the just compensation to the owner of the property sought to be taken or damaged. This is apparent from the form of their oath as prescribed by section 8, and by the terms of their verdict as required by section 9, of the Eminent Domain Law. The question of the right to condemn is preliminary, and is for the court, and must be determined in favor of the petitioner before the right to have a jury empaneled to fix the compensation can arise.

The property owner has the undoubted right to controvert the petitioner's right to condemn, and when he does so, the burden is thrown on the petitioner to maintain its right by proper proofs. But where the property owner fails to make such contest in any proper manner, the right to condemn will be deemed to be admitted, leaving the amount of the compensation to be awarded as the only matter in controversy. Thus, in this case, Lieberman was at liberty to controvert the averment of the petition that the petitioner was unable to agree with him as to the compensation to be paid in respect to the property sought to be taken, and if he had done so, the burden would have been thrown on the petitioner to prove said averment in order to establish its right to condemn, but the evidence on this question would have been addressed to the court, and the issue thus raised would have been one which, in the ordinary course of procedure, should have been determined before a jury could be called.

This rule of practice was considered in *Ward* v. *M. & N. W. R. R. Co.* 119 Ill. 287, where, after verdict of the jury assessing compensation, it was objected that no evidence of the corporate existence of the petitioner had been adduced at

the trial. In overruling that objection, we said : "No question is made as to the form or sufficiency of the petition, but it is objected no proof was made, on the trial, that petitioner was either a *de jure* or *de facto* corporation, and it is insisted that the omission to make such proof is fatal to the present condemnation judgment. * * * Defendant waived the making of such proof by going to trial on the merits of the controversy, without objection. Even if proof is required to be made of the formal allegations of the petition, such proof is addressed to the court, and not to the jury. Whether the petitioner in such cases is a corporation, and is authorized to exercise the right of eminent domain, is a question to be determined by the court, and with which the jury have no concern. It is a preliminary question, and if the land owner goes to trial on the merits, without requiring such proof to be made, it will be understood he waives the making of the proof, and admits the capacity in which the petitioner sues. The fact that no formal answer may be required to be made to the petition, under the practice that prevails in this State, would not prevent defendant from objecting that petitioner shall not proceed to ascertain the compensation to be paid, until proof is made it is a corporation, either *de jure* or *de facto,* under the law, and as such is authorized to exercise the right of eminent domain. In this case defendant went to trial on the merits, without objection as to the right of petitioner to condemn his land for public purposes, and he will be held to have waived the necessity of making proof of such right."

In the present case, not only was no objection made to the petitioner's proceeding to ascertain the compensation to be paid because of its not having established its right to condemn, but Lieberman's counsel came and entered their appearance in writing, and by the same instrument expressly requested a trial by jury as by law provided. They then took part, without objection, in the empaneling of the jury and the submission to them of the question of fixing the amount of compensation

10—141 ILL.

to be paid their client, and contested that question on the merits. By so doing, they waived all contest as to the petitioner's right to condemn, and thereby impliedly admitted such right, and they can not now be permitted, on being disappointed as to the amount of the jury's award, to retrace their steps and contest questions which were clearly preliminary to a jury trial.

It is next contended that the court erred in admitting in evidence to the jury the petitioner's articles of incorporation, on the ground that the petition was filed to condemn land for the right of way for an elevated railroad, and that said articles of incorporation did not authorize the petitioner to build such a railroad. We might well apply to this objection also the answer made to the last preceding one. By going to trial before the jury without contesting the petitioner's right to condemn for the purposes set forth in the petition, the respondent admitted such right, and the admission in evidence of said articles of incorporation could have occasioned him no prejudice.

But we are of the opinion that said articles of incorporation are sufficient to authorize the petitioner to build an elevated railroad, and that they were properly admitted in evidence. Said articles of incorporation bear date January 4, 1888, and said incorporation seems to have been formed under and in pursuance of the act to provide for the incorporation of railroad companies, approved March 1, 1872. 2 Starr & Curtis' Stat. 1907. Said articles declare it to be the purpose of said corporation to construct a "railroad" from a point on the north line of Van Buren street, Chicago, to a point on the Indiana State line, but nothing is said as to whether the proposed "railroad" is to be an ordinary railroad built upon the surface of the earth, or one to be built at an elevation above the surface. It is contended, therefore, first, that said articles, by their terms, apply only to a surface railroad, and, secondly, that the statute under which the incorporation was formed,

contemplates the organization of railroad companies only for the construction of ordinary surface railroads.  To this view we are unable to assent.

The first section of the act authorizes the organization of corporations "for the purpose of constructing and operating any railroad in this State," and said articles of incorporation provide for the construction of a "railroad" between two specified termini.  We are able to perceive no reason why the word "railroad" as here used should not be construed to apply to elevated railroads as well as to any others.  While most railroads, for obvious reasons, are so constructed as to make their grade conform, as nearly as practicable, to that of the earth's surface, yet it is a fact with which every one is familiar, that they are sometimes constructed wholly beneath the surface, and sometimes upon an elevation above the surface. It is also a matter of common knowledge that an ordinary surface railroad may and often does, in different parts of its line, run through tunnels excavated beneath the surface, or upon structures so built as to elevate it above the surface. But it has never been supposed that where they run beneath or above the surface, they are any the less entitled to the name of railroads.  Nor does the fact that a railroad is wholly under ground or wholly raised above the surface make it any the less a railroad.

The term "railroad" as used in the act of 1872, is clearly broad enough to include an elevated railroad, and we think the Legislature clearly intended to use the word in a sense sufficiently broad and general to include railroads of that character.  The same word, when used in the petitioner's articles of incorporation, must be deemed to be used in a sense equally general.  The petitioner then by its incorporation became authorized to construct a railroad between the designated points, and the authority thus obtained, included, *ex vi termini,* that of constructing an elevated railroad.

A question of construction bearing a close analogy to the one we are here considering arose in *Bishop* v. *North*, 11 Mees. & Wels. 418. There a statute passed in 1792, and long before steam railroads had an existence, provided, in substance, that in case the proprietor of any manor or estate containing any mines of coal or other minerals should find it expedient or necessary to make any railway or road to carry his coals, etc., over the lands of any other person, it should be lawful for him to make such railway or road, he first paying or tendering satisfaction for the damages to be thereby occasioned to such lands. In 1843 the question arose whether, under that act, a railway could be built over the lands of another on which steam cars and engines were to be used, it being contended that railways which required locomotive engines were not and could not have been contemplated by said act, no such railway being then in existence. The court, in holding that the act included steam railways, said: "The power given by the act is to make any railway; and it is not shown that the term railway has any definite meaning requiring it to be made on a level; and I can not think it can be qualified by showing that, at the time of the passing of the act, a particular species of railway, unlike the one contemplated, was in use. The power is general, to make railways over the lands or grounds of any person or persons, making satisfaction for the damages to be occasioned thereby."

In *City of Chicago* v. *Evans*, 24 Ill. 52, a question arose upon the construction of an act which provided that all railway companies incorporated under the laws of this State should have power to make contracts or arrangements with each other, or with railroad companies in other States for leasing or running their roads or any part thereof, the question being whether said act was broad enough to include horse railroads. In deciding that question in the affirmative it was said: "That act, in terms, applies to all railroads organized or incorporated under, or which may be incorporated or or-

ganized under, the authority of the laws of this State, and it provides that they shall have the power to make such contracts and arrangements with each other for leasing or running their roads, or any part 'thereof, also the right of connecting with each other, on such terms, as shall be mutually agreed upon by the companies interested. This language is manifestly sufficiently comprehensive to embrace horse railways as well as railroads whose cars are propelled by steam or other power, as well as roads authorized to transport passengers only, as roads authorized to transport passengers and freight by other power. The language of the enactment embraces all roads then organized, as well as those which might afterwards become so, and the act makes no distinction or reservation as to the character of the railroad." See also, *Clinton* v. *C. & L. Horse Ry. Co.* 37 Iowa, 61; *Oler* v. *Railroad Co.* 41 Md. 583; *New York Cable Co.* v. *Meyer*, 104 N. Y. 1; *Bulton* v. *S. R. Ry. Trans. Co.* 4 S. W. Rep. 332.

Under these authorities it can not be doubted, that the act of 1872, which provides for the incorporation of companies "for the purpose of constructing and operating any railroad in this State," applies to elevated railroads, and that the petitioner, being incorporated under that act with authority to construct a railroad, without qualification or limitation as to its character, is authorized to construct an elevated railroad.

Nor are we able to see that the question is materially affected by the provisions of the "Act in regard to elevated ways or conveyors," approved April 7, 1875. 2 Starr & Curtis' Stat. 1877. If that act was intended to have any reference to elevated railroads, which we think to be extremely doubtful, the articles of incorporation in this case are in full compliance with the terms of that act, as the only requirement of that act applicable thereto is the one which provides that the articles of incorporation of companies organized for the purpose of constructing an elevated way or conveyor, shall state the places from and to which it is proposed to construct the

same.    This the articles of incorporation in question do. Nor does the question seem to be affected by the fact that the act in regard to elevated ways and conveyors authorizes the organization of companies for that purpose under the provisions of chapter 32 of the Revised Statutes.    It does not require that they should be organized under that chapter, but merely provides that they may be so organized, and if an elevated way was intended to include an elevated railroad, there seems to be nothing in the act which prohibits the organization of companies for the purpose of building such elevated railroads under the act in relation to the incorporation of railroad companies.    The only limitation in the act of 1875 is, that the articles of incorporation shall state the termini of the proposed elevated way, a statement which is also required by the act in relation to the incorporation of railroad companies, and which was complied with in the petitioner's articles of incorporation.

It is next urged that the court erred in limiting the evidence of the value of the property to be taken, and of the damages to the property not taken, to October 18, 1888, the date of filing the original petition, instead of September 8, 1890, the date of the last amendment to the petition.    It is true the petition was several times amended in respect to the description of the property sought to be condemned, but we think it to be sufficiently evident that said amendments were in the direction of giving a fuller and more certain description of said property, and not by way of substitution of one parcel of land for another.    It seems to be plain that the property described in the amended petition and actually condemned, was the same property attempted to be described in the original petition, and an amendment in the direction of giving a fuller, or even a more accurate description, so long as there is no attempt to substitute other property for that originally described, can not be held to be tantamount to the filing of a new petition, so as to change the date in respect to which the

compensation should be estimated. We think the court properly restricted the evidence of value to the date of filing the original petition, under the rule laid down in *South Park Commissioners* v. *Dunlevy*, 91 Ill. 49.

At the trial, the counsel for the petitioner, was permitted, against the objection and exception of the respondent, to read in evidence to the jury a stipulation by the petitioner, entered into in pursuance of resolutions of the petitioner's board of directors to the same effect, that the railroad to be constructed upon the premises sought to be condemned, should be used and operated subject to the following conditions: 1. That it should be used only for passenger traffic. 2. That no soft or bituminous coal should be used or burned in the locomotives hauling trains upon said road, or in heating the cars running upon said road, and 3. That the motive power should be fully equipped with the best modern devices calculated to render it noiseless and smokeless, and to prevent the discharge of cinders and sparks. The admission in evidence of this stipulation is assigned for error.

We are of the opinion that it was properly admitted. That the stipulation was executed on behalf of the petitioner by competent authority can not be questioned, as it was accompanied by a certified copy of the resolutions of the petitioner's board of directors expressly authorizing its execution. In its subject matter also it is a stipulation which it was competent for the petitioner to make. The terms of the petitioner's articles of incorporation are general, and under them, the necessary consent of the municipal authorities of Chicago being first obtained, any structure properly embraced within the general designation of a "railroad" could be built, and such railroad could be used for any of the purposes to which such structures could appropriately be applied. It could be used for the transportation of passengers only, or of freight only, or of both, and the petitioner, so far as was consistent with due care for the rights and safety of others, would be at lib-

erty to select such machinery and appliances, and make use of such fuel, as it should see proper. Manifestly the damages to abutting property owners consequent upon the construction and operation of such railroad would to a very considerable degree depend upon the nature of the road, the purposes to which it was to be applied, the mode in which it was to be constructed, the character of its machinery and appliances and the fuel to be used. So long as the petitioner retained the broad discretion conferred by its charter, property owners whose property would be damaged by the construction and operation of the road, would have a right to have their damages estimated with reference to any use to which the petitioner, under its charter, would be at liberty to apply its railroad when built.

But the petitioner is in fact proposing to build a road to be used for passenger traffic only, and with a view of making it as inoffensive as possible to adjoining property holders, it is willing to abandon its right to burn bituminous coal, and to bind itself perpetually to provide and make use of the best modern appliances calculated to render its road noiseless and smokeless and to prevent the escape of sparks and cinders, and it had therefore a right to limit and bind itself in these respects by the resolutions of its board of directors, and by a stipulation executed in pursuance of such resolutions. By the stipulation it abandons the exercise if its franchises contrary to the mode stipulated, and its scheme is thus narrowed and definitely limited. The rights which it seeks to obtain by condemnation can be used and exercised only in subordination to the terms of the stipulation. This being so, it had a right to lay before the jury the exact scheme in pursuance of which its railroad is to be built and operated, and to have the facts thus presented taken into consideration in assessing the damages to the property not taken.

Various errors are assigned upon the rulings of the court in the instructions to the jury. Several of the points thus

raised are disposed of by what has already been said. As to the other points made, all we think it necessary to say is, that we have examined them with care, and have duly considered the suggestions of counsel in relation thereto, and that we find none of them well taken. Nor do any of them seem to be of sufficient importance to warrant our extending this opinion by noticing them in detail. On the whole record, we are of the opinion that no material error is shown, and the judgment of the Circuit Court will therefore be affirmed.

*Judgment affirmed.*