THE WEST SKOKIE DRAINAGE DISTRICT, Appellee, *vs.* JOHN M. DAWSON *et al.*—(SARAH F. HOGAN *et al.* Appellants.)

*Opinion filed December 22, 1909.*

1. EMINENT DOMAIN—*when question of effort to agree upon compensation is waived.* When a land owner appears and consents to the selection of the jury and contests the case upon the merits he waives the question of any effort being made by the petitioner to agree upon compensation before filing the petition.

2. SAME—*power of court to limit number of witnesses is not arbitrary.* While the number of expert witnesses may be limited in the sound discretion of the court, as may also the number of witnesses to prove a given fact which is uncontroverted or merely collateral to the main issue, that discretion must be exercised in a reasonable and not an arbitrary manner, judged by the special facts of the case itself.

3. SAME—*rule as to limiting number of witnesses, not experts, on any relevant point.* If there be any attempt to limit witnesses, not experts, on any particular relevant point it must be when such point is already satisfactorily established, and the court must so exercise its discretion that none of the parties will be deprived of any material rights.

4. SAME—*when the defendant is entitled to call an additional witness.* Where the defendant in a condemnation proceeding, on cross-examining a witness for the petitioner, brings out the fact that the witness has based his judgment of the value of the land upon the sale of a certain tract, the defendant is entitled to call a witness to show that such sale was a forced sale under foreclosure, even though he has already called the number of witnesses limited by the court.

5. SAME—*the price paid at compulsory sale is not admissible.* One method of showing the value of the land involved in a condemnation proceeding is to prove sales of similar property in the immediate vicinity; but such sales must have been in the open market and not compulsory, and the price paid at a foreclosure sale is not admissible.

6. SAME—*when statement by witness that land is poor is improper.* Where a witness for the petitioner is asked whether the defendant's land is suitable for agricultural purposes, his answer that the land is very poor is a mere conclusion, and he should be required to state in what respects the land is or is not suitable for agricultural purposes.

7. SAME—*it is proper to show interest of witness.* In a condemnation proceeding by a levee drainage district, an engineer who testified for the petitioner may be asked, on cross-examination, if he had not been promised "considerable money" if the proceeding went through, as it is always competent to ask a witness, on cross-examination, by whom he is employed and whether he is paid, in order to show his interest.

8. SAME—*what matters are proper for consideration of jury.* In a condemnation case the distance of the land involved from a certain city, its character and how it compares with other lands similarly situated which have been sold for certain prices, are matters which are proper for the consideration of the jury.

9. SAME—*the damage to land not taken includes entire farm although only one tract is intersected.* Where the farm through which a right of way for a drainage ditch is sought to be condemned consists of one eighty-acre tract and one forty-acre tract adjoining, the damage to the land not taken must be considered with reference to the entire farm though the ditch intersects only one of the tracts.

10. SAME—*when an instruction is not authorized by stipulation.* Where a right of way one hundred feet wide for a ditch twenty feet wide is sought to be condemned, a stipulation that the land owner might use the balance of the 100-foot strip when it was not required by the petitioner does not authorize an instruction that the land owner would have the right to use and *control* all of the land not used for said ditch or for drainage purposes.

11. SAME—*a drainage district acquires perpetual easement but fee remains in owners.* Under both the Levee act and the Farm Drainage act drainage districts have perpetual easements in the land condemned for ditch purposes, but the fee remains in the owners of the lands.

APPEAL from the County Court of Lake county; the Hon. DEWITT L. JONES, Judge, presiding.

E. V. ORVIS, for appellants.

PAUL MACGUFFIN, and ORVIS & BEAUBIEN, for appellee.

Per CURIAM: This is a proceeding brought by the West Skokie Drainage District to condemn a right of way for a ditch across certain lands of appellants. The drain-

age district was organized under the Levee act. (Hurd's Stat. 1908, p. 817.) The petition sets up that the authorities of the drainage district were unable to agree with the owners as to the value of the land, and therefore, in accordance with section 17 of said Levee act, this petition was filed to condemn, in accordance with and under the provisions of the Eminent Domain act. The strip of land sought to be condemned across appellants' land was one hundred feet wide and contained six and three-fifths acres. The ditch was to be twenty feet wide at the top, six feet wide at the bottom and six feet deep, with sloping sides. Appellants filed a cross-petition, setting forth that they were the owners of one hundred and twenty acres of land through which the proposed ditch was to be constructed, and that the ditch would divide said property into two pieces, so that a bridge would have to be built across the ditch and fences built on each side of the ditch for the proper use and enjoyment of said one hundred and twenty acres; that such land was suitable for hay, pasture and plough land and for sale for a country home. After issues were joined a jury was empaneled, which heard evidence and viewed the property, returning a verdict of $222.25 for the land taken and no damages to the remainder. Judgment was entered on this verdict and an appeal taken to this court.

It is first insisted that there is no testimony in the record showing that any effort had been made to make a settlement with appellants before filing the petition. When the land owner appears and consents to the selection of the jury and contests the case on the merits he will waive the question as to failure of the petitioners to agree with him on the value of the property. *Lieberman* v. *Chicago Rapid Transit Railroad Co.* 141 Ill. 140; *Gillette* v. *Aurora Railways Co.* 228 id. 261.

Before hearing any evidence the trial judge announced that he would "limit the number of witnesses to five on a

243—12

side." The record does not show that appellants consented or objected to this statement at that time, neither does it disclose whether the court meant the limitation to apply to expert witnesses only, or to the witnesses who testified as to the facts. Six witnesses testified for petitioner, one of them being the engineer who made the survey. All of them, except the engineer, testified as to their opinion of the value of the land taken and as to the damages to the remainder. The engineer gave his opinion as to the size and character of the ditch required at that point for a drainage district. After five witnesses had been called for appellants, who testified as to the value of the land taken and the damages to the remainder, counsel for appellants called another witness, and the trial judge announced that he had limited the witnesses to five and that appellants could not call any more. Counsel for appellants said he did not agree to that limitation, and that the engineer had been called by petitioner as an opinion witness also. He also stated that he wanted to rebut certain facts sworn to by petitioner's witnesses, especially a statement as to a sale testified to by petitioner's witness Miller on cross-examination. This witness testified that he based his judgment as to the value of the land on sales in the vicinity. He was then asked, "Do you base it on the Culver sales?" and answered, "No, sir; I base it on the Mines sale,—the forty acres north of this,—at $10 an acre." A motion was made to strike out the answer as not responsive. This was denied. The witness was then asked if he did not know the Mines land was encumbered with a mortgage for $1200, and the witness' answer was, "I know nothing of the kind." He was then asked if he did not know that there was a question about the title to the Mines land. An objection was made and sustained to this question. When the matter arose, during the taking of appellants' testimony, as to the limitation of the witnesses, counsel stated that he wanted to prove that the Mines land, testified to

by witness Miller, was sold at foreclosure sale under a second mortgage, a forced sale and also subject to an outstanding first mortgage, and that no title was transferred by the proceedings under which the sale was made. The trial court refused to allow him to call witnesses to make such proof, and exception was duly taken to the ruling.

The question of limiting the number of witnesses in the trial of a case has been discussed at various times by this court. In *Gray* v. *St. John,* 35 Ill. 222, we said (p. 238): "Courts have the right to limit the number of witnesses to be examined and the number of depositions to be read to prove a particular fact. When a fact is sufficiently established and is not controverted, the court may properly refuse to suffer its time to be occupied in hearing further evidence on that point." In *Union Nat. Bank* v. *Baldenwick,* 45 Ill. 375, it is stated (p. 378): "Nor is a party restricted to the proof of a fact by one witness. If the fact is not controverted, it is no doubt in the discretion of the court to limit the number of witnesses to prove it; but when the truth of the fact is contested it is otherwise." In *White* v. *Hermann,* 51 Ill. 243, this court said (p. 246): "It is also urged that the court erred in refusing to permit appellants to call more than four witnesses to prove the value of this property. It may be that on a mere collateral question the court may have a discretionary power to limit the number of witnesses who may testify on that particular question. We are aware of no rule of practice, however, which authorizes a court to prevent a party from introducing more than four witnesses to prove the issue in the case. It is true, the statute has provided that the costs of four witnesses, only, shall be taxed against the unsuccessful party unless the court shall certify that a greater number were necessary, but this in nowise prevents a party from introducing more if he is willing to risk the liability to pay their fees for attendance." In *Mueller* v. *Rebhan,* 94 Ill. 142, it was held that after the examination of a great

number of witnesses as to certain facts which are conceded by the opposite party there is no error in refusing to hear other witnesses to prove the same facts. To the same effect as this last case are *Lake Shore and Michigan Southern Railroad Co.* v. *Brown,* 123 Ill. 162, and *Stern* v. *Smith & Co.* 225 id. 430. In *Green* v. *Phœnix Mutual Life Ins. Co.* 134 Ill. 310, this court said (p. 315) : "The trial court must, of necessity, exercise discretion as to the number of witnesses to prove a given fact that is not disputed or that is merely collateral to the main issue, depending very much upon the nature and subject matter of the inquiry." And on page 316: "The court may undoubtedly limit the number of witnesses called as experts, and in some cases for the purposes of impeachment. * * * It should, however, be understood that in such cases the exercise of the discretion must be reasonable. The court may not arbitrarily determine the number of witnesses that may testify in such cases,"—citing authorities. In a special assessment matter (*Burhans* v. *Village of Norwood Park,* 138 Ill. 147,) this court said (p. 152) : "In general, it is held to be within the discretion of the trial court to limit the number of witnesses on the different questions involved in cases like the present. (Lewis on Eminent Domain, sec. 434, and authorities there cited.) But the discretion must be reasonably exercised, so as to deprive the parties of no material rights, and an abuse of it in this respect will be reversible error.—*Green* v. *Phœnix Mutual Life Ins. Co.* 134 Ill. 310." See, also, as bearing on this question, 1 Wharton on Evidence, (3d ed.) sec. 505; 3 Jones on the Law of Evidence, sec. 814; *Bissell* v. *Cornell,* 24 Wend. 354; *St. Louis, M. and S. E. Railroad Co.* v. *Aubuchon,* 116 Am. St. Rep. 499, and note; also note on this last case in 8 Am. & Eng. Ann. Cas. 828.

While the number of expert witnesses may be limited in the sound discretion of the court, as may also the number of witnesses to prove a given fact which is uncontro-

verted or merely collateral to the main issue, that discretion must be exercised in a reasonable and not in an arbitrary manner, judged by the special facts in the case itself. The authorities are not in entire harmony as to whether the court can limit the number of witnesses on evidence as to facts that is merely cumulative in its character. No hard and fast rule can be laid down circumscribing the power of trial courts to put some reasonable limits on the introduction of witnesses to testify as to a main issue in the trial of a cause. If there be any attempt to limit witnesses, not experts, on any particular relevant point, it must be when such point has already been satisfactorily established, and the court must so exercise this discretion as to deprive none of the parties to the litigation of any material rights. Certainly this rule has no application as to witnesses called to rebut new or additional facts brought out by the opposing party on direct or cross-examination.

One of the main controversies here was the value of the land taken. One method of showing this value is to prove sales of similar property in the immediate vicinity, but such sales must have been in the open market, and not compulsory. (*Peoria Gas Light Co.* v. *Peoria Terminal Railway Co.* 146 Ill. 372, and cases cited.) The weight given by the jury to witness Miller's testimony as to the Mines sale for $10 an acre might have been greatly modified if the evidence showed that land was sold subject to a mortgage. Further, if it was sold at a foreclosure proceeding, under the settled law of this State the price received was not admissible in evidence to prove value. Even though drawn out by counsel for the appellants on cross-examination, they should have been permitted to prove the actual facts connected with the sale. The difference in values of the property taken between that found by the jury in their verdict ($222.25) and that contended for by appellants ($3000) was so great that the evidence of this sale, unexplained, may have materially affected the verdict

of the jury. We think the court committed reversible error in refusing to permit appellants to make proof as to the facts concerning this Mines sale.

Several other objections as to the court's rulings on the admission and exclusion of testimony are raised by appellants. Witness Carroll, for the petitioner, was asked whether appellants' land was suitable for agricultural purposes, and his answer was that it was very poor. Appellants' counsel moved to strike this out as a conclusion. The motion was overruled. This was plainly a conclusion, and the witness should have been required to testify in what respects the land was or was not suitable for agricultural purposes. Several leading questions were also asked of this witness by counsel for the petitioner. The objections made by counsel for appellants on these questions should have been sustained.

The engineer who testified for the petitioner was asked, on cross-examination, as to his interest in the result of the suit and if he had not been promised "considerable money" if the proceedings went through. These questions were objected to and the objection sustained. It is always competent to ask a witness, on cross-examination, by whom he is employed and whether he is to be paid, in order to show his interest. *Chicago City Railway Co.* v. *Carroll,* 206 Ill. 318; *McMahon* v. *Chicago City Railway Co.* 239 id. 334.

Several questions asked of appellants' witnesses with reference to the location and surroundings of the land were not permitted to be answered. The distance of the land from the city of Lake Forest, its character, how it compared with other lands similarly situated and which had sold for certain prices, were all proper questions to be submitted to the jury. The trial court limited the testimony on these points within too narrow bounds.

Appellants also insist that the court gave improper instructions and improper rulings in the admission and exclusion of evidence as to the damages to the land not taken.

This land seems to have been in two pieces. As we understand the record, there was one eighty-acre piece and another of forty acres adjoining. The ditch ran through one piece and not the other. It is contended that the rulings of the court, as well as the instructions, tended to lead the jury to believe that the damages to the land not taken should be confined only to the piece through which the ditch ran. The cross-petition of appellants included both pieces. Where the land sought to be taken for public use is of greater value, considered as a part of the entire property, than if taken as a distinct and separate piece entirely disconnected from the residue, the just compensation for the part so taken is its fair cash or market value when considered in its relation to and as a part of the entire property, and not simply what may appear to be its value as a separate and distinct piece. (*Chicago and Evanston Railroad Co.* v. *Blake,* 116 Ill. 163; *Illinois, Iowa and Minnesota Railway Co.* v. *Humiston,* 208 id. 100.) In view of some of the rulings of the court on the admission and exclusion of evidence, we are disposed to think that instruction 2 given for the petitioner might lead the jury to think that they only had a right to consider the damages to the remainder of the particular piece of land through which the ditch was to be constructed. The instruction should have clearly shown that the damages to the remainder included the remainder of the entire one hundred and twenty acres.

During the trial a stipulation was introduced in evidence, signed by the officials of the drainage district, by which it was provided that only twenty feet should be taken for the purpose of constructing the main ditch, and that after the ditch was constructed the "balance of the 100-foot strip included in the petition, being for the purpose aforesaid, may be used by the adjoining owners when not required by said district." Instruction 9 given for petitioner stated, among other things, "that the owners of the lands

adjoining the ditch, when constructed, have the right to use and control all of the land not used for said ditch or not in use for drainage purposes," etc. This instruction also stated that the fee simple title to the 100-foot strip remained in appellants. It is contended that the instruction is wrong, first because of the word "control" being broader in its meaning than the stipulation, and also because the fee would not remain, after the condemnation, in the property owners. Both under the Levee act and the Farm Drainage act the drainage districts have perpetual easements in the land condemned for ditch purposes, the fee remaining in the owners. (*Morgan Creek Drainage District* v. *Hawley,* 240 Ill. 123; *Chronic* v. *Pugh,* 136 id. 539; *Drainage Comrs.* v. *Harms,* 238 id. 414.) We think, however, the instruction was erroneous in saying that the control of the land not used for the ditch or for drainage purposes would be in the property owners. As the instruction was worded it might have led the jury to believe that after the ditch was constructed the property owners would have entire control, ever after, of the 100-foot strip, except as to the twenty feet actually used for the ditch. The owners of the fee would only retain such right to use the land as was not inconsistent with the easement required by the drainage district. That easement might require the district frequently to come upon the 100-foot strip to repair or care for the ditch itself.

It is also contended that some of the instructions are open to the criticism of stating that the jury having visited and inspected the property might fix their estimate of its value upon such a view without considering the testimony of witnesses. While those instructions are not, in some respects, aptly worded, they do not seem to be fairly open to this construction. The law on this question has been recently discussed and the correct rule laid down by this court in *South Park Comrs.* v. *Ayer,* 237 Ill. 211. We deem it sufficient on this point to refer to that case.

A number of other questions are presented by counsel in their briefs, but as the errors already referred to necessitate a reversal of the judgment and as the questions not decided may not arise in the further proceedings, we do not feel called upon to consider or discuss them.

For the errors indicated the judgment of the county court will be reversed and the cause remanded for a new trial.