JOHN E. GEOHEGAN *et al.* Appellees, *vs.* THE UNION ELE-
VATED RAILROAD COMPANY *et al.* Appellants.

*Opinion filed February 17, 1915.*

1. DAMAGES—*when a refusal to permit proof of condition of property at time of trial is not error.* Where the trial of an action for damages to real estate from the construction and operation of an elevated railroad does not take place until some sixteen years after the railroad was put in operation, it is not error to restrict the proof with respect to sales or long-term leases of the property to a period of six years after the road was put in operation and to refuse to permit such proof up to the time of the trial; and the fact that there were no sales or long-term leases during such period does not affect the reasonableness of the limitation.

2. SAME—*when refusal of evidence to prove that decrease in rents was due to mismanagement is not error.* In an action for damages to real estate from the construction and operation of an elevated railroad, it is not error to refuse to allow the defendant, for the purpose of showing that the decreased amount of rent received from the building was due to mismanagement, to prove that for ten years after the railroad was put in operation the building produced only $3300 rent per year, while the following year, under new management, it produced $8300, as such proof is too remote in point of time.

3. SAME—*when the court may limit the number of witnesses.* Although the controlling issue in a case is the effect of the construction and operation of an elevated railroad upon the market value of the plaintiff's property, the court has power, in the exercise of sound discretion, to limit the number of witnesses whose opinions are desired upon such main issue.

4. SAME—*signing of a frontage consent to construction of elevated railroad does not release damages.* The signing of a frontage consent by a property owner to the construction of an elevated railroad does not amount to a release of damages nor an admission that there would be no damages, and proof that such a release was signed is immaterial.

5. SAME—*when the recovery of interest is unauthorized.* In an action for damages to real estate from the construction and operation of an elevated railroad it is error to authorize the jury, if they found damages for the plaintiff, to include a sum equal to five per cent per annum upon the amount of damages. (*City of Chicago* v. *Allcock*, 86 Ill. 384, adhered to.)

6. SAME—*when instruction as to considering elements of benefits or damages is erroneous.*  In an action for damages to real estate from the construction and operation of an elevated railroad it is error to instruct the jury that they are to consider only such elements of damages or benefits which in an appreciable degree are capable of estimation in dollars and cents.

7. SAME—*what instructions as to question of damages need not be given.*  In an action for damages to real estate from the construction and operation of an elevated railroad it is not error to refuse instructions stating that any diminution in value of the property due to financial panic not the fault of the defendant should not be considered, nor should evidence of value during certain years previous to the construction of the railroad, if such value was merely the temporary effect of the location in the city of a world's exposition, be taken as the test of the value of the plaintiff's property before the construction of the railroad, as such instructions are objectionable in isolating certain facts and calling attention to them.

8. SAME—*what must be considered by the jury as special benefit.*  If the evidence shows that the effect of an elevated railroad in front of the plaintiff's property is to create a great increase in the number of persons passing the premises who get off or take trains there, and that the effect of such additional travel is to increase the market value of the premises, such enhancement in value must be considered by the jury in determining the question of damages to plaintiff's property from the construction and operation of the railroad.    (*Eldorado, Marion and Southwestern Railroad Co.* v. *Everett,* 225 Ill. 529, explained.)

9. SAME—*when an instruction as to burden of proof is properly refused.*  In an action for damages to real estate from the construction and operation of an elevated railroad the whole issue is damage or no damage, and the burden of proof upon such issue is upon the plaintiff; and it is proper to refuse an instruction stating that if the jury find, from the evidence, that the property was damaged, and the amount thereof, then the burden of showing any offset to or reduction of such damages by reason of travel facilities furnished by the railroad to the property in question is upon the defendant.

APPEAL from the Superior Court of Cook county; the Hon. WILLIAM E. DEVER, Judge, presiding.

ADDISON L. GARDNER, FRANCIS W. WALKER, RANDALL W. BURNS, and ROGER L. FOOTE, for appellants.

HARRY S. MECARTNEY, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action brought in the superior court of Cook county by appellees, against appellants, to recover damages to certain real estate located on Fifth avenue, in Chicago, between Randolph and Lake streets, by reason of the construction, operation and maintenance of the elevated railroad in front of said property. On trial before a jury a verdict for $7200 in favor of appellees and against appellants was obtained and judgment entered thereon. This appeal followed.

This is the second trial of the cause. The judgment for appellants in the former trial was reversed by this court. (258 Ill. 352.) Both parties argue that the verdict is contrary to the evidence. Appellees have assigned cross-errors. Appellants argue that the property of appellees was greatly benefited by the construction and operation of the said elevated railroad and that the allowance of any damages was unwarranted by the evidence, while the appellees insist that the damages are most inadequate. This difference is due largely to counsel's different views of the law and methods of ascertaining the result. We deem a discussion of the weight of the evidence unnecessary, as the verdict is clearly within the range of the evidence and is not so manifestly against its weight that this court would set it aside for that reason.

Counsel for appellants complain that they were not permitted to prove sales or long-term leases of the property in question, or other property similarly situated, later than the year 1903 or 1904. The operation of the trains began in 1897. The object of the trial was to ascertain the actual effect of the construction, operation and maintenance of the railroad on appellees' property. To prove this, evidence was admissible of the value of the property, and the facts having a tendency to show such value, for a reasonable time

both before and after the doing of the acts complained of. The rule is well established that "evidence of the value of the property before and after the time when the damages are alleged to have been sustained is admissible, and the time within which such evidence shall be confined is a matter in the sound discretion of the trial court." (*Springer v. City of Chicago,* 135 Ill. 552.) In *Lanquist* v. *City of Chicago,* 200 Ill. 69, it was held proper to refuse evidence of the price plaintiff paid for his land seven years before a proceeding to condemn it was begun, because the time was too remote. In some cases it has been held that evidence of the condition at the time of the trial was competent, but the reason for the ruling in those cases was that the condition that existed had a bearing on the value of the property before and after the alleged damage, and in those cases the trial occurred within a short time after the alleged damage was committed. Here the trial was sixteen years after the railroad was put in operation. The fact that no sales or long-term leases of this property, or property similarly situated, were made between 1895 and 1904 does not necessarily affect the reasonableness of the limit. In a case such as this, matters affecting the values of real estate are constantly occurring. The trial court did not abuse its discretion in limiting the time to six years after the occurrence complained of, within which such evidence should be confined.

Appellants further contend that the court erred in refusing to permit them to prove that the decrease in rents received from the building was due to the mismanagement of the property. Appellants proposed to prove that for the ten years beginning with 1897 the building produced $3300 rent under one management, and that in 1908, under a different management, it produced $8300 rent. This might or might not have a. tendency to prove improper management, but, like the evidence of sales, it was too remote from the period about which the controversy existed. The rul-

ings of the court did not prevent appellants from proving that appellees did not get the full rental value from the property for all the years in question down to 1903.

On motion of counsel for appellees, during the introduction of their testimony, the court announced that each side might introduce, by· way of opinion evidence, the testimony of five witnesses. Appellees introduced three witnesses upon the question of the market value and rental before the construction of the road and after its operation was begun and the effect of such construction and operation on the property. The appellants introduced five witnesses,—men engaged in the real estate business who were acquainted with the property in question and that in the vicinity and transactions in such property,—and they also testified as to the effect of the railroad upon the appellees' property and other property affected thereby. Counsel for appellants then offered C. R. Bechtel as a witness to testify on this subject. He was a real estate dealer who had been in the business in the down-town district of Chicago since 1897 and had been familiar with this property since that time and had made a sale of property within a half block of its location. Counsel for appellees objected to his testifying as he was the sixth opinion witness on the question of values, and the objection was sustained. Two other witnesses then present in court were thereupon offered by appellants to testify as to their opinions as to the effect on the value of the property by the construction and operation of said elevated railroad. On objection the court refused to permit them to testify. It is most earnestly insisted that the court erred in such refusal, as such effect on the value was the controlling feature of the case and the evidence already introduced on that question was sharply conflicting.

The general rule is, that a trial court, in the exercise of a sound and reasonable discretion, has the power to limit the number of witnesses who shall testify to a particular fact. (1 Thompson on Trials,—2d ed.—sec. 353; 38 Cyc.

1345.) This has often been done on questions of value or damages, and the discretion of the trial court in these matters will not be interfered with except in cases of abuse. (2 Lewis on Eminent Domain,—3d ed.—sec. 653.) . This practice has been sanctioned even as to witnesses offered to prove the main facts in a case, (Jones on Evidence,— 2d ed.—sec. 814,) though in some of the cases a distinction is made between direct and collateral issues. (21 Ency. of Pl. & Pr. 891; 3 Ency. of Evidence, sec. 930.) This court has discussed at various times the question of limiting the number of witnesses in the trial of a case. The authorities were reviewed at some length in *West Skokie Drainage District* v. *Dawson,* 243 Ill. 175, and the conclusion was reached that the number of expert witnesses may be limited in the sound discretion of the court, as may also the number of witnesses to prove a given fact which is merely collateral to the main issue, but that such discretion must be exercised in a manner not arbitrary but judged by the special facts of the case. This case is found in 17 Ann. Cas. 776, with an elaborate note showing that the authorities in most jurisdictions uphold the conclusions reached by this court.

Counsel insist that the witnesses whose testimony was rejected on this point were not expert witnesses, and that this court, in *White* v. *Hermann,* 51 Ill. 243, and *Chicago, Burlington and Northern Railroad Co.* v. *Bowman,* 122 id. 595, held that even if they were experts, as that term is used in the law, the court was without authority to limit their number on the question of value of real estate in a case of this character. In *White* v. *Hermann, supra,* this court reversed the case because the trial court had unduly limited the number of witnesses to four, who were to swear to the value of the property in question. What was said in the opinion on the point here in dispute was unnecessary to a decision of the case. In *Chicago, Burlington and Northern Railroad Co.* v. *Bowman, supra,* the only ques-

tion involved was which party should be taxed with the costs when the witnesses were limited in number.

In discussing the question of limiting the number of expert witnesses, the late Judge Cooley, in *Fraser* v. *Jennison,* 42 Mich. 206, said (p. 224) : "There must be some limit to the reception of expert evidence, and that which was fixed in this case was quite liberal enough. To obtain such evidence is expensive, since desirable witnesses are not to be found in every community, but an army may be had if the court will consent to their examination; and if legal controversies are to be determined by the preponderance of voices, wealth, in all litigation in which expert evidence is important, may prevail almost of course. But one familiar with such litigation can but know that for the purposes of justice the examination of two conscientious and intelligent experts on a side is commonly better than to call more, and certainly when five on each side have been examined the limit of reasonable liberality has in most cases been reached. The jury cannot be aided by going farther." This court, in *Green* v. *Phœnix Mutual Life Ins. Co.* 134 Ill. 310, (10 L. R. A. 576, and note,) stated (p. 316) : "The court may undoubtedly limit the number of witnesses called as experts,"—citing *Fraser* v. *Jennison, supra,* in support of that doctrine. The Michigan case on this question has been repeatedly quoted with approval in other jurisdictions. See to the same effect, *American Stove Co.* v. *Cleveland Foundry Co.* 158 Fed. Rep. 978.

If the three witnesses in question may fairly be termed experts, they come within the rule laid down by this court in the *Green case,* above referred to, and again approved, after a review of all of the authorities, in *West Skokie Drainage District* v. *Dawson, supra.* Witnesses are usually called experts when they possess peculiar skill and knowledge upon the subject matter upon which they are called to testify. (2 Words and Phrases,—2d series,—p. 401, and cases cited; Black's Law Dict. 461.) Such witnesses, per-

haps, might better be called skilled than expert, for persons constantly engaged in special lines of activity possess knowledge of certain facts not known by ordinary persons. Some authorities have held that no reason was perceived why such witnesses should be spoken of as experts, though persons competent to testify on particular subjects are, as a rule, possessed of such facts, so far as relates to their specialty, that they are frequently designated as experts. (17 Cyc. 674, and cited cases.) All authorities seem to agree that witnesses having the necessary qualifications may give their opinions as to the value of property. It will not be presumed that a witness is competent to give an opinion, but it must be shown that he has some peculiar means of forming an intelligent, correct judgment as to the value of the property in question or the effect upon it by a particular improvement, beyond what is possessed by men generally. This knowledge may be derived from buying and selling, valuing and managing, real estate in the town or county where the particular property is situated or by reason of being acquainted with property in the neighborhood where it is situated, especially if accompanied by a knowledge of sales of similar property. It is not necessary that the witness should have been engaged in the real estate business. The value of such opinion will depend upon the intelligence of the witness and the knowledge and experience he possesses in such matters. (2 Lewis on Eminent Domain, secs. 654-656; *Sewell* v. *Chicago Terminal Railroad Co.* 177 Ill. 93.) Knowledge of values of property often does not depend upon such professional or other special skill or training as would entitle witnesses to be called "experts," as that term is generally understood. (Jones on Evidence,—2d ed.—sec. 363, and cases cited.) While experts are frequently called upon to answer hypothetical questions, that is not the general practice with reference to witnesses called to give evidence as to the value of property or the benefits or damage thereto. Such witnesses usu-

ally have a personal knowledge of the facts, and testify, not in answer to a hypothetical question as to assumed facts, but upon their personal knowledge or observations. (Jones on Evidence,—2d ed.—sec. 375.) The three witnesses in question had such personal knowledge, and under all definitions of the term might properly be classed as skilled or expert witnesses. They are so called in appellants' original brief, as they were also by counsel when the trial court made the ruling here questioned. Even if that were not true, they were called upon to give opinion testimony, and under the logic and reasoning of the rule laid down as to when trial courts should limit the number of witnesses, we see no reason why witnesses who would not ordinarily be classed as experts but who are competent to give their opinions as to the values of property should not be limited in number, the same as experts, technically so called, can be limited, for, in cases of this character, in a great city a very large number of persons could be found who could testify as to the value of property situated similarly to that in controversy.

Under the established practice in this State as to limiting the number of experts to testify on either side, the court had authority to so limit them in the trial of this cause. In the light of the facts in this case, having in mind that only three witnesses testified for appellees and five for appellants as to the value of the property and its injury or benefit by the construction and operation of the railroad, we do not think it can be held that appellants were injured by this ruling.

Charles D. Richards, a witness for the appellees, testified as to the value of the property after the railroad was put in operation, stating, among other things, that he did not take into consideration, in his estimate, the amount of travel brought by the elevated road, though in his judgment that travel was beneficial; that he could not estimate that benefit or separate it from other facts going to fix the value,

and he did not fix it either way. Counsel for appellants insist that the court erred in not allowing their motion to strike the evidence of this witness from the record. The argument of counsel goes only to the weight that should be given to this witness' testimony. The motion was properly overruled.

Counsel for the appellees, in his opening to the jury, admitted that his clients had signed frontage consents for the construction of the railroad in Fifth avenue. The court thereafter permitted counsel to withdraw this statement from the consideration of the jury and refused to permit counsel for appellants to go into an investigation of that question on the cross-examination of certain witnesses. It is insisted that this ruling was erroneous. The signing of the frontage consents was immaterial on the question of damages, as such consents would not amount to a release of damages or an admission in any way affecting the amount.

The court, at the request of appellees, instructed the jury that if they found a verdict for them they should take into consideration the lapse of time which had occurred since the construction of the railroad and include in their verdict a sum equal to five per cent per annum upon the amount of damages. Counsel for appellants insist that this instruction, under the law of this State, was error. On the question when interest shall be allowed there is a great contrariety of decisions. The courts of this country allow interest more liberally than in England. The American courts seem to look upon interest as a natural incident of the growth of the money, while the English courts treat it as something independent, only to be had by virtue of some positive agreement or statute. Whether interest shall or shall not be allowed in certain cases is by no means free from difficulty. The most general classification of causes of action with reference to interest is as to liquidated and unliquidated demands. The rule is quite general that interest is not allowed on unliquidated damages or demands.

Often, as to unliquidated demands, the defendant has no means of knowing in advance of proof what the precise pecuniary damage has been. In many jurisdictions, in actions of tort interest cannot be recovered. In other jurisdictions, however, interest may be included as a part of the damages in cases of torts against property. (2 Sutherland on Damages,—3d ed.—secs. 32, 33, 347, 348; 1 Sedgwick on Damages,—9th ed.—secs. 292, 299, 315, 316; 22 Cyc. 1500, and cited cases; 16 Am. & Eng. Ency. of Law,—2d ed.— 1027; *Cochran* v. *City of Boston*, 27 Ann. Cas. (1913*b*) 206, and note; *Lester* v. *Highland Boy Gold Mining Co.* 1 Ann. Cas. (Utah) 761, and note; *Fell* v. *Union Pacific Railway Co.* 28 L. R. A. [N. S.] 1, and note.) In this State the decisions have followed the English rule, and have held that the recovery of interest depended entirely upon the statute. In a very early case it was held that at common law interest could not be recovered except upon a contract to pay it, and that it was regulated in this State by statute. (*Sammis* v. *Clark*, 13 Ill. 544.) That decision in this regard has frequently been quoted with approval by this court and the doctrine adhered to that the recovery of interest depended entirely upon the statute. *City of Pekin* v. *Reynolds*, 31 Ill. 529; *Flake* v. *Carson*, 33 id. 518; *Illinois Central Railroad Co.* v. *Cobb*, 72 id. 148; *Fowler* v. *Harts*, 149 id. 592; *Dady* v. *Condit*, 209 id. 488.

Section 2 of our statute on interest provides, among other things, that interest shall be allowed on money lent or advanced for the use of another; on money due on settlement of account from the day of liquidating accounts between the parties and "ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment." Under the authorities in this State, where property has been wrongfully taken, an action of trespass or trover may be maintained and interest properly recovered, based on the construction

of this statute that interest is authorized when there has been an unreasonable and vexatious delay of payment. In *Illinois Central Railroad Co.* v. *Cobb, supra,* it was stated, on page 153: "There can be no difference between the delay of payment of a moneyed demand and one where property has been wrongfully taken, or taken and converted into money or its equivalent. The two rest upon the same principle." In *Chicago and Northwestern Railway Co.* v. *Shultz,* 55 Ill. 421, after deciding the case upon other grounds, it was stated that in an action on the case to recover for an injury to the property resulting from the negligence of the defendant, it was proper to allow the plaintiff interest from the time the injury was done. What was said there on this point was later held by this court to be dictum, merely, and to be disregarded. *Toledo, Peoria and Warsaw Railway Co.* v. *Johnston,* 74 Ill. 83.

Counsel for appellants insist that the same rule should apply in cases of this kind as to the allowance of interest as is applied in condemnation proceedings. The question of interest in eminent domain cases has been the subject of a great diversity of opinion. In the absence of any statutory provisions controlling, the special rules in respect to interest must be derived from constitutional principles requiring just compensation to be paid for property taken. (2 Lewis on Eminent Domain,—3d ed.—sec. 742.) This court has had occasion more than once to rule on the question of interest in eminent domain matters. In *Cook* v. *South Park Comrs.* 61 Ill. 115, it was stated that "interest should be allowed upon judgments, when final, in proceedings of this character. They are within the spirit, if not the terms, of the statute, which allows interest upon all judgments recovered." The rule as there laid down was referred to with approval in *Bertholf* v. *Quinlan Bros. & Co.* 68 Ill. 297, *South Park Comrs.* v. *Dunlevy,* 91 id. 49, and *City of Chicago* v. *Palmer,* 93 id. 125. It is apparent from the reasoning of this court in these and other deci-

sions touching the question of interest in eminent domain proceedings, that interest was allowed in such matters after judgment, because then the amount of damages was considered fixed or liquidated. (See *Beveridge* v. *West Chicago Park Comrs.* 100 Ill. 75; *Phillips* v. *South Park Comrs.* 119 id. 626; *Moll* v. *Sanitary District,* 228 id. 633; *Tudor* v. *Rapid Transit Railroad Co.* 164 id. 73.) In this case, the only ground, under the statute, that can be urged for the allowance of interest would be for unreasonable and vexatious delay as to the payment of damages. The amount of liability, if any, was unascertained until the verdict, and the delay in the ascertainment does not appear from this record to have been more the fault of appellants than of appellees. There is nothing in this record indicating that the appellants or their counsel have been guilty of using unreasonable or vexatious methods in preventing a speedy adjustment of the controversy. Mere delay of payment or the defense of a suit does not authorize a recovery of interest. The delay of payment must be both unreasonable and vexatious and have arisen from the fault of the debtor. *Hitt* v. *Allen,* 13 Ill. 592; *Devine* v. *Edwards,* 101 id. 138; *West Chicago Alcohol Works* v. *Sheer,* 104 id. 586; *Mueller* v. *Northwestern University,* 195 id. 236.

The precise question as to interest here under consideration was decided in *City of Chicago v. Allcock,* 86 Ill. 384. That was an action for damages to real estate caused by the construction of a tunnel, the property of the plaintiff being seriously damaged by the subsequent sinking of the surface of the ground. The court said (p. 385) : "Interest cannot be recovered in this State, in any case, except where the statute authorizes it. At common law it could be recovered in no case except where there was an express agreement to pay. Interest may, then, be regarded as depending upon, and as the creature of, the statute." And again, on page 386: "The city had the undoubted right to make the improvement, and in the exercise of that right it

had the power to construct the tunnel through the lands of
the plaintiff. If in making the improvement the property
of plaintiff was damaged the city would be bound to re-
spond in damages, but the damages sustained could not be
regarded a debt due from the city until the same was as-
certained by a jury, nor could the city be regarded as with-
holding money by an unreasonable and vexatious delay of
payment." That decision has been quoted with approval
by this court in *South Park Comrs.* v. *Dunlevy, supra,* and
*Fowler* v. *Harts, supra,* and is generally recognized in other
jurisdictions and by all writers on the subject as the law
of this State. The Supreme Court of the United States,
in *United States Mortgage Co.* v. *Sperry,* 138 U. S. 313,
said, in citing this and other Illinois decisions, on page 338:
"In Illinois the whole subject [of interest] is regulated by
statute, and interest cannot be recovered unless the statute
authorizes it."

Counsel for the appellees have argued forcibly and at
length that the rule here as to interest in cases of this
character is contrary to the weight of authority, and that
the court should overrule the long established doctrine of
this State in order to allow property owners whose prop-
erty has been damaged in cases of this character to recover
just compensation for the injury. This argument would
not be without merit if addressed to the legislature but
can be of little weight when addressed to a court, under
the law as it has heretofore existed on this question. The
statute covering the recovery of interest was enacted, sub-
stantially as it now exists, in 1845. It was re-written in
1874 with some changes, and has since then been slightly
amended by the legislature. Had there been any such great
need for change of the law in this regard as insisted on
by counsel for appellees, it might well be argued that the
legislature would long ago have appreciated the situation.
It is obvious from the great conflict of decisions on the
question of interest and the different rules laid down in

the various jurisdictions, both in this country and in England, that all persons do not agree as to what is the proper rule. The law can only be known if fixed and established rules are adhered to consistently. Manifestly, not only the interests of the State but of the individual, as well as the proper administration of justice, require that there shall be settled rules in the interpretation of the law, otherwise we would have "confusion worse confounded." "After repeated decisions on the same point by this court the maxim *stare decisis* should prevail, it being for the best interests of society that there should be some permanency in judicial decisions, so that the law may be known, and when known pursued and obeyed. It should be a shield and a guide, and not a snare, for those who may come within its operation." (*Hopkins* v. *McCann,* 19 Ill. 113.) "Property is purchased on the faith of the stability of decisions of the courts, and it is essential that questions, when once decided, should no longer be considered open or doubtful or subject to change. Legislation can only affect the future, but when courts vacillate and overturn their own decisions the evils may be incalculable. They operate retrospectively, and may often disturb rights which should be regarded as certain and fixed." (*Braxon* v. *Bressler,* 64 Ill. 488.) The Supreme Court of the United States, in *Gelpcke* v. *City of Dubuque,* 1 Wall. 175, where the decision of a State Supreme Court overruling a number of its own former decisions was being considered, refused to follow the last decision, and said: "It cannot be expected that this court will follow every such oscillation, from whatever cause arising, that may possibly occur." This rule is grounded on public policy, and should be observed unless more harm than good will result from so doing. It has always been most strictly followed where property or contract rights were involved. It should never be departed from except for most serious causes, and "wherever the construction of a statute has been repeatedly given in the same way, or

where a construction has been given and acquiesced in for a number of years, it would be manifestly improper for a court to disturb questions thus settled." (*Bowers* v. *Green,* I Scam. 42; Sutherland on Stat. Const. sec. 314.) The decisions of this court, while unreversed, necessarily form the absolute law of cases and enter with very decisive effect into the body of the law. Numerous and valuable rights may often be claimed under them. (Wells on Stare Decisis, chap. 41.) The rule that the recovery of interest will only be permitted when authorized by statute has always been the law in this State, adhered to for nearly a century. To set aside this long line of decisions on this question at this late date because, as argued by counsel, great injustice would otherwise be done in this case, would, in our judgment, result in more harm than good in the administration of justice. The legislature may change this rule if public policy requires such a change. We do not deem it the province of the court so to do. The court erred in giving this instruction as to interest.

Appellants complain of the fifth instruction given on behalf of appellees. It told the jury that the action was brought for damages to the plaintiffs' property arising from the "construction" of the structure in the street for elevated railroad purposes. The erection of the structure, alone, may have been injurious, but the question was what was the combined effect of construction and operation. Appellants claim that it was beneficial. The total effect of the construction and operation of the railroad was the injury appellees had the right to complain of, if there was an injury. The instruction should not have confined the claim to the "construction," only.

Appellees' eighth instruction told the jury that in arriving at a verdict they were to consider "such elements of benefits or damages which in an appreciable degree are capable of estimation in dollars and cents, in connection with other of such elements as are shown by the evidence

266 – 32

in the case." This court held in the former decision of this case (258 Ill. 352,) that it was the duty of the jury to ascertain the total effect of the thing complained of as a damage or benefit, and this they may do although they cannot estimate in money each element of the benefit or damage. The instruction here is so worded that it might mislead the jury into believing that they could only take into consideration such elements of benefits or damages as were capable of each being individually itemized in dollars and cents. The instruction as worded should not have been given.

Counsel for appellants further contend that the court erred in refusing to give two instructions, numbered 18 and 19, requested by them. One told the jury that if they found that from 1894 to 1898 there was a financial panic, not produced by appellants, which affected the market value of the property in question detrimentally, any diminution in value due to the panic should not be charged to the construction and operation of the railroad. The other told the jury that if they found that from 1890 to 1892 there was a general increase in the market value of property on Fifth avenue caused by the location of the World's Columbian Exposition, and that such increase was temporary and not permanent, then evidence of sales or leases, during those years, of property so affected in its market value should not be considered as a test of the value of the premises in question. These instructions called particular attention to certain portions of the evidence. They isolated a fact and called the attention of the jury to it. This court has repeatedly held such instructions objectionable. (*Weston* v. *Teufel*, 213 Ill. 291; *Stern* v. *Smith & Co.* 225 id. 430; *Helbig* v. *Citizen's Ins. Co.* 234 id. 251.) Appellants' instruction 3 given to the jury told them, in general terms, that they should not take into consideration, in fixing the value, facts and circumstances that existed independently of and not attributable to the construction, operation and

maintenance of the defendants' railroad. This fully covered these questions so far as appellants were entitled to have the jury instructed concerning them. There was no error in refusing these instructions.

Counsel for appellees argues that the court erred in refusing their requested instruction to the jury to exclude from their consideration all benefit which accrued to the premises, or to the owner thereof, by reason of improved travel facilities furnished by said elevated railroad. The argument now urged in support of this instruction is, in effect, the same that was urged in this court on the former hearing of this case and in the case of *Brand* v. *Union Elevated Railroad Co.* 258 Ill. 133, to induce the court to overrule its former decisions on that question. The court, in the last case just referred to, after reviewing the previous decisions, quoted with approval the rule laid down on that question in *Metropolitan West Side Elevated Railway Co.* v. *Stickney,* 150 Ill. 362, where it was said that "if property is enhanced in value by reason of the improvement, as distinguished from the general benefits to the whole community at large, it is said to be specially benefited, and is to be assessed for the special benefits notwithstanding every other piece of property upon or near the improvement may be to a greater or less degree likewise specially benefited." The argument is made here, as it was on the prior hearing and in the *Brand case,* that the benefits by reason of improved travel facilities furnished by the elevated railroad are not to be considered by the jury on a question such as they had here under consideration. The evidence tended to show that the effect of the elevated railroad was to create a great increase in the number of persons passing appellees' premises, who left or took the trains there, and that the effect of such additional travel was to increase the market value of the premises. This enhancement in value, under the rule announced, is a special benefit which the jury must take into consideration in

determining the amount of damages and benefits. Nothing was said in *Eldorado, Marion and Southwestern Railroad Co.* v. *Everett,* 225 Ill. 529, that in any way conflicts with the rule as thus laid down in the *Stickney case,* in view of the facts under consideration in those cases. The court did not err in refusing the instruction in question.

Counsel for the appellees further argues that the court erred in refusing instruction 10 requested in their behalf, which read:

"The jury are instructed that if you find, from the evidence, that the premises in question were damaged by the construction of the elevated railroad in the street on which said premises abut, and find, from the evidence, the amount of such damage, the burden of showing any offset to or reduction of the amount of such damage by reason of market benefit from travel facilities furnished by the so-called 'Loop' railroad to the premises in question is upon the defendant."

In this State it has been settled that to decide whether the land is damaged by the construction of a railroad in front of it, such as here, requires "that every element arising from the construction and operation of the railroad or other public improvement which in an appreciable degree, capable of ascertainment in dollars and cents, enters into the diminution or increase of the value of the particular property," should be taken into consideration. (*West Side Elevated Railroad Co.* v. *Stickney, supra,* p. 383.) The whole issue in a case of this kind is whether the land was damaged. The affirmative of this issue rested upon appellees. To prove that question involved a consideration of the elements of benefit and damage. Under the rulings in this court the burden of proof on that issue was necessarily upon appellees. "A party who claims compensation for a legal injury must show, as a part of his case, that he has suffered a loss through the injury, and the burden of proving what loss he has suffered is upon him." (1 Sedg-

wick on Damages,—9th ed.—sec. 170.) The burden is upon the plaintiff, in a case of this kind, to show that but for the railroad his premises would have been worth more than the evidence shows them to be. (1 Nellis on Street Railways,—2d ed.—sec. 234.) The instruction was rightly refused.

The correctness of certain rulings as to other instructions given and refused is questioned by both parties. We find no serious error in the rulings as to any of them.

The judgment of the superior court is reversed and the cause remanded.                    *Reversed and remanded.*