(No. 19761.—

RICHARD L. PARISH *et al. vs.* MORRIS SCHWARTZ *et al.* Appellees.—(RICHARD L. PARISH, Appellant.)

*Opinion filed June 18, 1931.*

STONE, C. J., and HEARD and DeYOUNG, JJ., dissenting.

Robert F. Pettibone, (Deneen, Healy & Lee, of counsel,) for appellant.

Moses, Kennedy, Stein & Bachrach, and Jones, Addington, Ames & Seibold, (Walter Bachrach, Thorley Von Holst, Walter H. Moses, and Arthur Magid, of counsel,) for appellees.

Per Curiam: At the October term, 1930, an opinion in this case was adopted and filed. A rehearing was allowed at a subsequent term. Upon further consideration of the case the opinion filed at the October term is re-adopted and re-filed.

Mr. Commissioner Edmunds reported this opinion:

Richard L. Parish and others (hereinafter designated as complainants) filed their bill in the superior court of Cook county against Morris Schwartz, Sol Schwartz and Henry Schwartz, defendants, to enjoin and restrain the latter from violating the restrictive covenant of a written contract, by the terms of which defendants agreed not to manufacture or sell bung-hole appliances for a period of years in certain territory. The trial court entered a decree sustaining a demurrer to the bill and dismissing it for want of equity. This decree was affirmed by the Appellate Court, and the case is here on appeal of Richard L. Parish by virtue of a certificate of importance granted by that court.

The bill in its original form sets out a written contract entered into on June 16, 1927, by and between Morris Schwartz and Sol Schwartz as parties of the first part and complainants as parties of the second part. This contract provides that whereas Morris and Sol are the owners of 940 shares of the capital stock of the American Flange and Manufacturing Company, (hereinafter designated as the company,) they agree to sell and complainants agree to buy at the price of $53,500, cash, the 940 shares of stock. The contract further provides that as part of the consideration

for the purchase Morris shall transfer to the company all his right, title and interest to certain described patents; that Morris and Sol, and each of them, "covenant and agree that they will not, nor will either of them, engage directly or indirectly, either in person or as stockholders in or employees of any other corporation, or as members or employees of any partnership or association, or otherwise, for the period of sixteen years from the date of this agreement, in the manufacture or sale of articles relating to bungs or plugs for bung-holes or air-vent openings in containers, bushings in or at, and for use in or at, bung-holes or air-vent openings, tags and sealing devices for bung-holes, or air-vent openings and bungs therefor, and mechanisms of bungs and sealing devices, either in the United States of America east of the Mississippi river or in any territory in which the company is now selling its products, and will not employ or offer employment to any person now in the employ of the company." After setting out the contract, including the above provisions, the bill alleges that Morris transferred to the company all his right, title and interest in the patents specified; that complainants paid over the sum of $53,500 cash to those entitled thereto; that notwithstanding the provisions of the above contract Sol and Morris have engaged and are now engaged in the manufacture and attempted sale of articles relating to bungs and bung-hole devices in the proscribed territory; that the company had been engaged in the manufacture of such articles for a long time prior to June 16, 1927; that Morris was from March 1, 1923, until July 6, 1927, the president of the company, and Sol was during said period an officer and employee thereof; that Morris and Sol, combining and confederating with Henry Schwartz and other parties unknown, are engaged in a conspiracy to violate the above contract; that pursuant to said conspiracy Morris is endeavoring to induce various named customers of the company to withdraw their business from it and make their purchases from Henry, doing busi-

ness as the Schwartz Manufacturing Company; that the company has a capital stock of 3250 shares, divided into 3000 shares of common of no par value and 250 shares of $100 per share preferred; that there are now outstanding 3000 shares of common and 200 shares of preferred, of which complainants own 2716 shares of common and 123 shares of preferred; that irreparable injury will result to complainants unless appellees are restrained from prosecuting their conspiracy, and that demand has been made upon defendants to desist, but they have refused to do so. The bill concludes with a prayer for injunctive relief as above indicated. Later, by leave of court, paragraphs were added to the bill alleging that the company was principally engaged in the manufacture and sale of a bushing for use in or at bung-holes, a sample of which was attached as an exhibit, "which bushing and similar bung-hole appliances constitute but a particular and narrow class of articles in the metal manufacturing industry; * * * that said bushings were and are sold mainly to the manufacturers of steel barrels, whose plants are scattered over the entire United States;" that Morris and Sol, while officers of the company, became acquainted with its customers, contracts and business, and unless prevented from competition as prayed could use the moneys obtained as the purchase price of their stock to conduct a competitive business, which would greatly lessen the value of the stock sold by them to complainants; that the price asked by and paid to Sol and Morris was greatly in excess of the value of the stock unless accompanied by the agreement not to compete; that the stock was purchased only upon the condition of such agreement not to compete; that at the date of the agreement the company was selling such bushings in the States east of the Mississippi river and in the city of St. Louis, Missouri; that the restrictive clause in the contract described such bushings and bung-hole appliances in a number of different phrases, but all relate to and describe in various ways the appliance manufactured and

sold by said. company, a sample of which is attached as an exhibit; that prior to his becoming an officer in said company the occupation of Morris was that of a die and tool maker and he had never been engaged in the business of making and selling bung-hole appliances; that the restrictive covenant in the contract does not prevent him from exercising his trade as a die and tool maker; that prior to his becoming an officer of said company the occupation of Sol was that of a musician and he had never been engaged in the business of making and selling bung-hole appliances and had no technical training or experience in any manufacturing or merchandising business, and that said bushings are used principally on oil barrels, and many of the States west of the Mississippi river are large producers of oil.

In *Lanzit* v. *Sefton Manf. Co.* 184 Ill. 326, and *Union Strawboard Co.* v. *Bonfield,* 193 id. 420, this court had before it the question as to how far effect could properly be given to covenants not to carry on a trade or business. In the *Lanzit case* the covenant involved was to refrain for ten years from engaging in any capacity in the business of manufacturing or selling certain paper products. By separate and distinct paragraphs the territory within which the restriction applied was described in turn as the United States, the State of Indiana, the State of Illinois, and Cook county, Illinois. The trial court entered a decree giving effect to the covenant in so far as it applied to the States of Indiana and Illinois. This court held such decree improper, calling attention to the settled rule that contracts in general restraint of trade are void as being against public policy, and referring to the earlier case of *Hursen* v. *Gavin,* 162 Ill. 377, where it was said: "A contract in restraint of trade is thus total and general when by it a party binds himself not to carry on his trade or business at all or not to pursue it within the limits of a particular country or State." In commenting on the decree entered by the trial court it was said in the

*Lanzit case:* "The effect of the contract, if enforced as decreed below, would be to deprive the public—the people of the whole State—of the industry and skill of appellant in the particular trade or business in which he may be most skillful and useful, and compel him to engage in some other business or move to another State in order to support himself and family,—in other words, to expatriate himself so far as his citizenship of this State extends and go beyond our jurisdiction." Thus it was made clear by the *Lanzit case* that the mere fact that such a covenant may not be wider than necessary for the protection of the covenantee from the competition intended to be guarded against is not determining, and that the consideration which is of paramount importance is the interest and welfare of the people of the State of Illinois. In the *Union Strawboard case* the covenant involved was to refrain for twenty-five years from the manufacture and sale of strawboard or similar products in Illinois, or anywhere else where so doing might conflict with the business interests or lessen the profits of the company. In holding that this covenant could not be enforced this court said: "It is not sufficient that there is a good consideration, for that is necessary to any contract, nor is it sufficient that the restraint is no greater than necessary to secure the intended benefits to the opposite party. * * * The restrictions imposed by this contract are probably no greater than necessary to prevent competition with the Union Strawboard Company in its business, but that is not the only test of its validity. If it should be conceded that the contract is divisible, the question then is, under this declaration, whether it can be enforced as to the entire State of Illinois. Counsel contend that it is valid to that extent, at least, and that the rule stated on that subject in the cases above cited should not be adhered to. The reason for the rule is, that it is against the policy of the State that the people of the whole State should be deprived of the industry and skill of a party in an employment useful to

the public and he should be compelled either to engage in other business or abandon his citizenship of the State and remove elsewhere in order to support himself and family. The argument is, that a contract to be in general restraint of trade must extend to the entire realm of the United States, which would not be deprived of the industry of the citizen or of his citizenship unless he must go to a foreign country. Within its own sphere the State has a public policy as a commonwealth, which the courts of the State regard and enforce, distinct from questions of policy affecting the nation at large. The State regulates its internal affairs, supports those who become public charges and is interested in the industries of its citizens. It is against the policy of the State that its citizens should not have the privilege of pursuing their lawful occupations at some place within its borders and that a citizen should be compelled to leave the State to engage in his business and to support himself and family. It is true that a contract may be valid which embraces portions of more than one State. Trade and business are not affected by State lines, and a contract might be good in restraint of trade which embraced, within reasonable limits, parts of different States, but an agreement which applies to the whole State is void and cannot be enforced." In *Andrews* v. *Kingsbury,* 212 Ill. 97, it was said: "The law is well settled that contracts in total restraint of trade are void for the reason that they are injurious to the public, depriving it of the industry of the party restrained, and also because of the injury to the party himself by being deprived of the opportunity to pursue his avocation for the support of himself and family; but a contract which is only in partial restraint of trade and is reasonable in its provisions as to time and place, and supported by a sufficient consideration, is valid, and the restraint is held to be reasonable whenever it is such, only, as affords a fair protection to the interests of the one in whose favor it is made." (Citing, among other authorities, *Union*

*Strawboard Co.* v. *Bonfield* and *Hursen* v. *Gavin, supra.*)
In *Tarr* v. *Stearman,* 264 Ill. 110, it was said: "Every contract of this kind must be judged according to its special circumstances, and whether it is reasonable or contrary to public policy is a question of law. (*Lanzit* v. *Sefton Manf. Co.* 184 Ill. 326.) A contract which is only in partial restraint of trade will be held valid if it is reasonable and has a valuable consideration to support it. (*Hursen* v. *Gavin,* 162 Ill. 377.) * * * In construing all such contracts, however, the interests of the public must be held paramount. * * * The public have an interest in and a right to the skill of appellee in the business, trade or profession in which he is the most successful or useful.—*Lanzit* v. *Sefton Manf. Co. supra.*"

The necessary purport of the restrictive covenant which it is sought to enforce in the present case is, that nowhere in the State of Illinois, for sixteen years, may defendants pursue the line of trade in which they were engaged at the time the contract was executed. It is at once obvious that the above principles are decisive of the question unless there exists such a state of fact that those principles are not properly applicable. Counsel argue that the facts as here admitted by demurrer are different and that the present case is distinguishable from those laying down the above rules, insisting, first, that the restriction in the *Lanzit case, supra,* was to an entire manufacturing business, whereas the restriction here applies only to a particular device, and that whereas in the *Lanzit case* it clearly appeared that Lanzit was deprived of his means of livelihood in the field of effort in which he was best qualified, here the covenanting parties were thoroughly qualified in other respects to serve themselves and the public. But it appears that here, as well, the restriction extends, in effect, to an entire business. As to the question of ability to earn a livelihood and serve the public, Morris was president of the company and Sol an officer thereof. Morris was the holder of patents pertaining

to the articles involved. Complainants do not assert any lack of qualification upon the part of defendants in so far as the business of manufacturing and selling bung-hole appliances is concerned, nor could they with propriety do so after bringing this suit. In any event, we find no warrant for a rule of law which would make the decision of this case dependent upon a judicial analysis of the versatility of defendants. Nor is there substantial basis for counsel's attempted distinction between the present case and the *Union Strawboard case.* Counsel argue that in that case the restriction extended throughout the entire world, and that it was thus clearly unreasonable and void. The court, however, said that the restrictions imposed were probably no greater than were necessary to prevent competition with the company, but that this was not the only test of validity, and, upon the theory that the contract was divisible, proceeded to lay down the decisive principles above expressed.

It is next contended that even though under the above authorities the contract here involved cannot be upheld, in view of the great industrial and commercial changes which have come about, the time is now at hand when the rule announced by them no longer has reason or justice in its support and therefore should be abandoned. In this connection counsel cite *Diamond Match Co. v. Roeber,* 106 N. Y. 473, characterized by them as a leading case, as well as other authorities, and argue that this court should now adopt the rule therein expressed. This self-same line of argument was advanced in the *Lanzit case,* as is evident from the following language: "It is also argued that the strictness of the rule laid down in the early cases has been greatly relaxed because of the different methods and increased facilities of communication and of transacting business, enabling the merchant or manufacturer to extend his trade over greater areas of territory than formerly was possible." The *Diamond Match case* was there considered. In the *Union Strawboard case, supra,* it was distinctly recog-

nized that trade and commerce are not affected by State lines. If the present record made a forceful showing that because of further developments in the field of commerce and industry the rule announced in the *Lanzit* and *Union Strawboard cases,* and recognized in succeeding cases, now works to the public prejudice in scme degree greater than at the time of those decisions, there would be more force in the argument that the proper action for this court to take now is to depart from the principle of *stare decisis* and promulgate a new and different doctrine. We see no sufficient basis upon which to justify yielding to the contention made. If public policy does require such a change as that insisted upon, the remedy may be found through application to the legislature. *Geohegan* v. *Union Elevated Railroad Co.* 266 Ill. 482; *Ohnesorge* v. *Chicago City Railway Co.* 259 id. 424; *Boston Store* v. *American Graphophone Co.* 246 U. S. 8.

It is argued that in repudiating the contract, under which they received substantial consideration, defendants have no standing in a court of chancery, and that, inasmuch as the defense asserted is an unconscionable one, the doctrine of *stare decisis* may not properly be invoked in their behalf. The answer to this is that in a situation of this kind the interest of the public, rather than the equitable standing of individual parties, is of determining importance. The defense is not here allowed because the party raising it is entitled to any consideration, but upon principles of public policy and to conserve the public welfare. *Fields* v. *Brown,* 188 Ill. 111; *Goodrich* v. *Tenney,* 144 id. 422.

The decree of the superior court was proper, and the judgment of the Appellate Court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*

STONE, C. J., and HEARD and DEYOUNG, JJ., dissenting.