## BROXHAM v. BORDEN'S FARM PRODUCTS CO. OF ILLINOIS.

### No. 4577.

Circuit Court of Appeals, Seventh Circuit.

Dec. 4, 1931.

C. W. Rice and Daniel M. Healy, both of Chicago, Ill., for appellant.

Charles S. Cutting, Nathan G. Moore, and William P. Sidley, all of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above).

The substantial part of appellant's agreement reads as follows:

"Now therefore, * * * in accordance with said agreement * * * the stockholders, subscribers hereto, do * * * unconditionally guarantee and agree to and with The Borden Company as follows: * * * that except in the employ of The Borden Company or its subsidiary corporations, he will not on or before August 15, 1933, either directly or indirectly engage in the milk business or the ice cream business in the City of Chicago or at any point within fifty miles of the city limits of said City as constituted at the date of this agreement; or without the written consent of The Borden Company be interested or hold stock in or extend financial aid or assistance to any firm or corporation engaged in the milk business or the ice cream business in the City of Chicago, Illinois, or at any point within fifty miles of the city limits of said City as constituted at the date of this agreement.

"This agreement shall benefit the successors and assigns of The Borden Company. * * * "

■ Without reviewing the many decisions which have dealt with restrictive agreements, we will merely state our conclusion, which is that the agreement here under consideration was not unreasonably extensive, either as to time or territory. Wark v. Ervin Press Corp., 48 F.(2d) 152 (C. C. A. 7); Hill v. Central West Public Service Co., 37 F.(2d) 451 (C. C. A. 5); Parish v. Schwartz, 344 Ill. 563, 176 N. E. 757. The period of time, to wit, five years, within which appellant was denied the right to engage in the milk business other than as an employee of appellee, is, under all of the authorities, not unreasonable. The territorial limitation likewise did not extend beyond the necessities of appellee's business. The distribution of milk in Chicago necessitates the purchase of that product in the surrounding territory. Upon the facts disclosed, a radius of fifty miles would not seem to be too extensive.

■ In support of his contention that the agreement was not assignable, appellant cites cases which hold that wage or employment contracts are not assignable. Such holdings are not determinative of the question he presents. For obviously it is one thing to assign an employment contract that is binding one party to work for another and quite a different matter to assign rights growing out of an agreement by one to remain out of a certain business in a limited territory for a limited period of time. In the instant case, the contract expressly provided that it should benefit the Borden Company and its "successors and assigns." We conclude therefore that the Borden Company could, as it did, assign its rights to its successor, the appellee herein.

■ It is finally argued that error was committed in refusing appellant leave to amend his answer so as to set forth the defense that the contract was void, because it was a part of a plan which appellee had entered upon to eliminate its competitors in the milk business in Chicago and to obtain a monopoly of such business, and to thereby increase the price at which milk was sold to customers and to lower the quality of the product thus sold. Appellant's request to so amend his pleading came after the other defenses upon which he relied had been determined adversely to him. While the suit had not been brought to a close, the record shows that both sides had fully presented their proofs upon the issues made by the original pleadings, and no further proof on either side was thereafter received. The error assigned, therefore, calls for review, a discretionary ruling by the District Court.

■ It is now generally recognized that courts will, with great liberality, permit amendments to pleadings at any stage of the trial in furtherance of the ends of justice. There remains nevertheless some discretion on the part of the trial judge, and, unless we are satisfied that the discretion was abused, the judgment will not be disturbed. Sauter v. First Nat. Bank of Phila., 8 F.(2d) 121 (C. C. A. 7). It therefore becomes necessary to examine the record and all of the facts to ascertain whether such discretion was abused.

■ The facts here justify the conclusion that, had the court exercised its discretion in favor of the appellant, it would have been to defeat, rather than to further, the ends of justice, which after all is the test by which courts may determine whether discretion is abused or exercised wisely. United Fuel Gas Co. v. Ironton, 107 Ohio St. 173, 140 N. E. 884, 29 A. L. R. 342.

The decisions and authorities (21 R. C. L. page 585) upholding the action of the trial court in refusing to permit amendments where the pleader sought to amend an answer by setting up the statute of limitations are somewhat analogous and sustain the conclusion here reached.

948

The conceded facts disclose the existence of a contract, the fruits of which appellant enjoys while he at the same time seeks to repudiate its obligations. He had received a large sum of money ($375,000) for the transfer of certain physical property, but a large part of which was paid in consideration of his agreement not to directly or indirectly engage in the milk or ice cream business in the city of Chicago. To permit appellant to thus profit by his contract and repudiate his obligations does not appeal to the conscience of a court of equity. His concern lest the public be injured by the agreement was a belated one and devoid of sincerity. If the execution of this contract violated the anti-trust laws of the state of Illinois (Cahill's Rev. St. 1931, c. 38, par. 598 et seq.) or the Sherman Anti-Trust Law of the federal government (15 USCA §§ 1–7, 15), the public would be better protected by a suit brought by the proper authorities to dissolve the monopoly than by permitting appellant to repudiate his obligations while retaining the valuable consideration paid for his agreement.

While we have no hesitancy in holding that a contract which is contrary to public policy and violative of the laws of the state or the federal government is void and non-enforceable, we are not prepared to say that a court abused its discretion in refusing a party thereto the right, late in the trial of the case, to amend his pleading so that he might be shielded from the consequences of his agreement, for which he received a very substantial consideration, under the guise of a public benefactor protecting the public against a monopolist.

Moreover, it is not seriously contended that the contract in question was void per se (Davis v. A. Booth & Co., 131 F. 31 [C. C. A. 6]), but it became so, if at all, because a part of a plan to create a monopoly through the elimination of various competitors. It is, therefore, not a question of enforcing a void contract, but one of permitting an amendment whereby appellant might avoid the consequences of an apparently valid contract by showing other transactions which might bring this, as well as other contracts, within the condemnation of the anti-monopoly law. It is repeated that ample legislation is available for the defeat of such a plan, if it exists and is effective, which remedial legislation provides that suits may be brought by those whose hands are clean and whose entry into a court of equity is not embarrassed by any sharing of the profits of the alleged illegal transaction.

We fail to find any abuse of discretion by the District Court in refusing appellant leave to amend his answer.

The decree is affirmed.