UNITED LENS CORPORATION v. DORAY LAMP CO., Inc. *

No. 6210.

Circuit Court of Appeals, Seventh Circuit.

Dec. 21, 1937.

*Rehearing denied Jan. 19, 1938.

C. Paul Parker and Lincoln B. Smith, both of Chicago, Ill., for appellant.

Williams, Bradbury McCaleb & Hinkle, of Chicago, Ill., and Braselton, Whitcomb & Davies, of Toledo, Ohio (Edmund B. Whitcomb, of Toledo, Ohio, Lynn A. Williams and Casper William Ooms, both of Chicago, Ill., of counsel), for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

This appeal is from a decree enjoining defendant and its agents from making, using or selling lenses which embodied the inventions described in the Clark Patent, No. 1,345,073, and also awarding damages suffered through defendant's infringement of said Clark Patent and also damages which plaintiff has suffered through the violation of a written contract wherein defendant agreed not to infringe the Clark Patent.

The decree leaves us uncertain as to which cause of action or ground plaintiff finally relied on. Supreme Court Equity Rule No. 71, 28 U.S.C.A. following section 723, calls for the exclusion of findings of fact and conclusions of law from the decree. Findings and decrees serve different purposes and have different legal effects and consequences. The first seven paragraphs of the decree should have been included in the findings of fact and conclusions of law, not in the decree. We gather from the court's memorandum and the finding No. 12 that only claims 9 and 10 were in issue. The decree, however, directs accounting and recovery under the Clark Patent which covers seventeen claims. Much of the discussion in plaintiff's brief, as well as the findings and conclusions and also the decree, suggests that plaintiff contemplated two causes of action or grounds of relief in one suit; one based on infringement of a patent, the validity of which was in issue, and the other sought recovery for alleged breach of an agreement wherein the defendant agreed not to attack the validity of the Clark Patent and likewise agreed to refrain from infringement thereof. The complaint does not separate the two causes of action, and it is quite impossible to determine whether counsel were relying on two causes of action or merely referred to the agreement "for good measure."

The agreement of August 18, 1933, was not set forth in the complaint in substance or in extenso, but inasmuch as the defendant did not seek to have the complaint made more definite or certain, and inasmuch as the briefs and arguments appear to be predicated on two separate causes of action, we assume that the District Court gave the plaintiff the benefit of the doubt and concluded that plaintiff sought to recover in one suit, damages for infringement of a valid patent owned by the plaintiff and also to recover damages for breach of the aforesaid agreement.

The importance of ascertaining the character and nature of the alleged causes of action appears from the fact that federal court jurisdiction may depend on our construing this cause of action as one in equity arising under the patent laws. If the suit were merely to recover for breach of an agreement, the recoverable damage would not be the same as in the patent infringement suit and therefore federal jurisdiction would depend on appropriate allegations of damages exceeding three thousand dollars (KVOS, Inc. v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; McNutt et al. v. General Motors Accept. Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135) together with allegations of diversity of citizenship.

*Cause of Action in Tort. Validity and Infringement of Claims 9 and 10.* Claims 1, 2, 3, 4, 12, 14, and 15 of this Clark patent were litigated and held invalid in the case of Columbia Lens Co. v. L. E. Smith Glass Co., 6 F.2d 97, decided June 29, 1925, by the Third Circuit Court of Appeals. No disclaimer of these claims was ever filed. The instant suit was begun nine years after the entry of the Circuit Court of Appeals' decree wherein the said seven claims were declared invalid.

Without discussion, we state our conclusions from these facts which are the bases of our holding in the instant suit that claims 9 and 10 are invalid, or at least unenforceable because of plaintiff's failure to disclaim the seven claims of the Clark patent which were held invalid.

(a) Patent grants are all traceable to Congressional enactment.

(b) The extent and length of protection evidenced by a patent grant is subject to all of the conditions and limitations which Congress has seen fit to impose.

(c) Where an inventor has obtained patent protection for more than his invention or discovery, the patent is void except as it may be saved by the disclaimer statute. 35 U.S.C.A. § 65.

(d) No patentee is entitled to the benefits of valid claims of his patent if he unreasonably neglects or delays to enter a disclaimer of those claims which have been judicially decreed to be void because the applicant obtained more than he was entitled to receive in the way of a monopoly. Ensten v. Simon, etc., 282 U.S. 445, 51 S.Ct. 207, 75 L.Ed. 453.

(e) Patentee is not required to disclaim in order that he may bring suit *on the same claims* in another court against a different defendant. Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949.

(f) The Circuit Court of Appeals in Columbia Lens Co. v. L. E. Smith Glass Co., although announcing an affirmance of the District Court decree which was based on a finding of infringement, nevertheless held that claims 1, 2, 3, 4, 12, 14, and 15 of the Clark patent were invalid. See opinion, 6 F.2d 97; Union Pacific Railroad Company v. Chicago, R. I. & Pac. R. Co., 163 U.S. 564, 16 S.Ct. 1173, 41 L.Ed. 265; Florida Cent. R. Co. v. Schutte, 103 U.S. 118, 26 L.Ed. 327; U. S. v. Chamberlin, 219 U.S. 250, 31 S.Ct. 155, 55 L.Ed. 204.

(g) Under the disclaimer statute the holder of a patent, several claims of which have been held invalid, must disclaim those claims within a reasonable time before he may bring suit to prevent infringement of the remaining claims of the same patent in the same or in a different court.

(h) One who fails to disclaim within nine years from the date of the Circuit Court of Appeals' final decree, holding certain claims of his patent invalid, has unreasonably neglected and delayed in making his disclaimer and is not entitled to enjoy any of the benefits of the disclaimer statute.

Our conclusion is that plaintiff may not maintain a patent infringement suit on the two claims not involved in the third circuit litigation in view of its failure to disclaim those claims held invalid by the Third Circuit Court of Appeals.

It follows that the first ground of relief—the patent infringement ground—must fail because claims 9 and 10 of the Clark patent are not entitled to patent protection.

*Alleged Breach of Contract Cause of Action.* On August 18, 1933, defendant entered into "a license agreement" with plaintiff. By it, plaintiff granted defendant a nonexclusive license to make, use, and sell lights and signals under another patent, the Arbuckle patent. Defendant, the licensee, agreed to pay a small royalty for any device which was covered by any claim of said Arbuckle patent.

In this agreement a provision wholly unrelated to the license agreement appeared. Paragraph 4 thereof reads as follows:

" 'Licensee' hereby expressly admits the title of 'Licensor' into each and all of the respective patents enumerated in this agreement and the validity of each claim of each patent now granted and enumerated within this agreement, and agrees that it will not at any time deny or contest or contribute or aid in any way either directly or indirectly in the contest of the validity of any of the respective patents enumerated in this agreement, or the scope of any claim or claims contained therein and further agrees that it will not infringe either directly or indirectly any of the claims of said Clark Patent No. 1,345,073 and said Brown Patent No. 1,359,789."

As a defense to the breach of contract cause of action, defendant first contends that he was induced to sign the agreement, with this allegedly innocent paragraph 4 therein, through the deceit, fraud, and misrepresentations of one Doll, the agent of the plaintiff; that the agreement was in fact never delivered, and further it was illegal, unlawful, in restraint of trade and void because contrary to public policy.

On the charge that Doll was agent of the plaintiff, the court found against defendant. Likewise, on the issue of fraud and deceit, the trial court filed a memorandum which conclusively answers the argument of the defendant's counsel as to the alleged fraud and deceit.

It may be that Dover, president of the defendant, relied too much on his friend Doll. However, unless Doll was the agent of the plaintiff, it is quite immaterial whether Doll was a true or a false friend.

The undisputed fact situation shows that defendant was represented by its president in the negotiation and execution of the contract in question. Dover, the president, was competent, capable and experienced. He was negotiating a contract for his company out of which it was expected a profitable business would arise. He should have known and probably did know the contents of the agreement which he signed. If he did not read the agreement or, having read it, relied upon the assurances of his friend Doll as to its legal effect, he cannot be excused for his mistakes. The most that can be said in his favor is that he and Doll were old acquaintances, business associates, and friends; that Doll made unjustifiable assurances to Dover; that Dover relied upon them and signed the contract in the belief that the paragraph 4 was either harmless, innocuous, or superfluous, although he was at the time sufficiently educated and experienced to have understood that written covenants in a contract are binding upon him just as much as the obligations of the other party are binding upon it. It may have been a case of misplaced confidence. Nevertheless, defendant can not avoid its obligation because it placed confidence in the business advice of a supposed friend unless such friend is agent of the plaintiff. The finding is that Doll was not acting as the agent of the plaintiff and in view of the record that finding is conclusive.

■■■■ There is, however, another reason why defendant may not repudiate this contract. If there were fraud in its negotiation, it would have been voidable at the election of the defrauded party. It would not be void, but voidable. Defendant did not elect to rescind, but on the contrary proceeded to carry out the contract. During the months that followed, defendant was in no way prevented from ascertaining the extent and character of its liability under paragraph 4 of the agreement. During that time it obtained, and has at all times since retained, the benefits which came to it by virtue of the other provisions of the agreement. It cannot ratify and also disaffirm a contract upon the discovery of fraud in its negotiation. Its action must be consistent.

Avoidance of the agreement because of alleged fraud must therefore be denied.

■■■■ Defendant's contention that paragraph 4 is void and against public policy must also be rejected.

We know of no reason why one individual may not validly contract to recognize the validity of a patent held by another party and also agree during the life of said patent not to infringe its claims. Such an agreement limits one of the contracting parties in respect to a specified commodity or article for a limited period of time.

■■■■ Presumably a duly issued patent is valid. An adverse decision on the validity of certain claims, while binding the parties to that litigation, does not conclusively settle the question of validity as between the patentee and other parties who were strangers to that litigation. Even though the patent may have been declared invalid and the outcome of the litigation may be accepted quite universally, nevertheless, interested parties may, for a valuable consideration, for a limited period of time, agree not to make the articles covered by the claims of the patent. The existence of a patent, either valid or void, does not determine the validity of such a contract. Parties may contract not to engage in a certain business in a certain territory for a certain period of time. Broxham v. Borden's Farm Products Co., 7 Cir., 53 F.2d 946; Guth v. Minn. Mining & Mfg. Co., 7 Cir., 72 F.2d 385. Likewise, under certain conditions, they may contract not to make, use or sell a certain article or commodity even though it is not patented.

Paragraph 4 in this case bound the defendant not to infringe any of the claims of the Clark patent. In so doing defendant agreed, in effect, not to make, use or sell products covered by the Clark patent during the life of the Clark patent. At the date of this agreement, the Clark patent had approximately four years to run. Defendant therefore agreed not to make a certain article, to-wit, a head light of the character described in the Clark patent and covered by the Clark claims, for the period of four years.

■■■■ The provision whereby defendant agreed not to deny or contest the scope of any claim of the Clark patent is unusual, but must be given a fair and reasonable construction. Undoubtedly the parties intended by such agreement, to give to the claims a broad construction which was not narrowed by prior art disclosure. Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316.

If the agreement in question were to depend, for its validity, upon the existence of a valid patent this negative agreement might raise a serious question of public policy. However, the right to make this agreement is not dependent upon the validity of the patent, or the existence of an article covered by a patent. We see no reason why the parties in their agreement should not define in any way the kind of a head light which the defendant agreed not to make. The fair construction of this agreement, we think, requires us to hold that the head light which the defendant was not to make was one which was covered by the claims of the Clark patent uninfluenced or affected by the prior art.

Another question presented by this second cause of action is the amount of the recoverable damages. We were at first inclined to hold the plaintiff's recovery was limited to nominal damages. We are dealing with a breach of an agreement not to make a certain head light not covered by a patent. It may be terminated by the defendant at any time upon giving ninety days' notice. Whether the recoverable damages are limited to nominal damages, however, may depend upon facts which are not disclosed in the record before us. They will appear when the hearing on the recoverable damages is held.

It is obvious that the recoverable damages for a breach of the agreement are not the same as might be recovered in a tort action where the tort feasor infringes a patent. A patent is a statutory monopoly. For its invasion, the patentee may recover from an infringer on the theory of a trustee ex maleficio. He also may, under certain circumstances, recover treble damages. Likewise he may recover the reasonable royalty for the unlawful invasion of his monopoly.

In a suit for damages for breach of an agreement not to make a commodity which is not covered by a patent, a court, in determining damages, is confronted by a situation where anyone but the defendant may make the article. The damage for its breach may be inconsequential. On the other hand, the parties to said agreement may be the principal producers of the particular commodity and the elimination of one may, for a limited period and in a properly restricted field, result in considerable benefit to the other. We therefore do not attempt to pass on the amount of the damages.

·In view of defendant's agreement not to contest the scope of the Clark patent, which we construe as an agreement to eliminate the prior art when considering the breadth of its claims, there is little or no doubt about infringement.

▌ There remains the single question of jurisdiction. Although not raised by either party, the court must nevertheless determine whether the Federal court has jurisdiction of this so-called second cause of action.

An extremely close question over the court's jurisdiction of the so-called second cause of action confronts us. Has the plaintiff asserted two reasons or grounds for the relief he seeks, to-wit, enjoining the defendant from making certain articles, and for damages, or has he joined two separate causes of action in the same suit? Keeping in mind that "a cause of action does not consist of facts, but of the unlawful violation of a right which the facts show," we find plaintiff skating on ice that is rather thin. Whether we have a suit where there are two separate causes of action, one presenting a Federal question and the other not, or have a suit where the plaintiff has two distinct grounds for supporting a single cause of action, one only of which presents a Federal question, is our inquiry.

As we read and apply Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, we adopt the latter view—a single cause of action supported by two grounds or theories.

▌ The distinction between the two theories is a refined one, to say the least. In the discussion throughout this opinion we have chosen, but for convenience's sake only, at times, to refer to the separate causes of action. They would be so considered in some code states where great liberality in joinder of causes of action growing out of the same transaction, exists. However, our duty is limited to applying the rule announced in Hurn v. Oursler, and in so doing we conclude the court retained jurisdiction of the cause which we have pleased to call, for convenience's sake, the second cause of action although the so-called first cause of action, the tort patent infringement cause, failed.

A second reason for sustaining the court's jurisdiction arises from the diversity of citizenship allegations which appear in the complaint. In other words, if there

were two separate causes of action stated, and it be conceded that the pleader set forth two separate causes of action, instead of assigning two grounds for one cause of action, all that prevents the allegations of the second cause of action from stating a good Federal cause of action is its failure to allege damages growing out of the breach of the agreement in excess of $3,000. It may be that such necessary damage allegations can be supplied through amendment.

The decree is reversed with directions to enter one in accordance with the views here expressed.